MARGERETE HENGEN, Plaintiff in Error, *vs.* GUSTAVE B. HENGEN, Defendant in Error.

*Opinion filed December 22, 1915—Rehearing denied Feb. 2, 1916.*

CONTEMPT—*what necessary to purge a party from contempt for failure to pay alimony.* Failure to pay alimony ordered by a decree is *prima facie* evidence of contempt, and if it is sought to show the failure to pay is because of inability to do so, the party must show, with reasonable certainty, the money received since the decree was entered and that it was used in paying expenses which under the law he should have paid before paying the alimony.

CARTWRIGHT, J., dissenting.

WRIT OF ERROR to the Branch "B" Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. JOHN P. McGOORTY, Judge, presiding.

MANIERRE & PRATT, for plaintiff in error.

E. G. LANCASTER, for defendant in error.

Mr. CHIEF JUSTICE FARMER delivered the opinion of the court:

This case comes to this court by writ of *certiorari* to review a judgment of the Appellate Court reversing a judgment of the circuit court of Cook county adjudging defendant in error guilty of contempt of court for failing and refusing to comply with a judgment and decree of the circuit court for the payment by him to his wife, plaintiff in error here, of alimony *pendente lite* and solicitor's fees.

In March, 1911, plaintiff in error filed her bill in the circuit court for separate maintenance. The bill made various charges against defendant in error as reasons why the plaintiff in error was living separate and apart from him without her fault. Defendant in error answered the bill, denying the charges made against him and charging his wife with misconduct. July 14, 1911, plaintiff in error applied to the court for an order for the payment by defendant in error to her of alimony *pendente lite*. Upon the hearing of this application, which was resisted by defendant in error, both parties offered proof of the amount and value of defendant in error's estate and property. The hearing resulted in an order and decree that defendant in error pay plaintiff in error, as alimony *pendente lite*, $150 per month, and that he also pay her $200 for solicitor's fees. From this decree defendant in error appealed to the Appellate Court. That court affirmed the decree October 9, 1913. On November 11, 1913, the order of affirmance was filed in the circuit court. On November 8, 1913, notice was served on the solicitors for defendant in error that plaintiff in error would apply to the court on November 11 for a rule on defendant in error to show cause why he should not be punished for contempt of court in failing to comply with the order for the payment of alimony and solicitor's fees. In support of the application for a rule on defendant in error the affidavit of plaintiff in error was filed, in which it was alleged defendant in error had never paid any-

thing whatever under the order for the payment of alimony and solicitor's fees *pendente lite,* and that there was then due plaintiff in error under said order $4250 and that defendant in error was fully able to pay said sum. On November 17, 1913, an order was entered ruling defendant in error to show cause why he should not be punished for contempt of court in failing and refusing to comply with the order and decree for the payment of alimony and solicitor's fees. By the order defendant in error was given until December 8, 1913, at ten o'clock A. M., to answer the rule. On December 8 the hearing was continued until December 22, 1913, on which day a hearing was had and an order entered reciting that the cause coming on to be heard on the motion and affidavit of plaintiff in error, and it appearing to the court certified copies of the orders of November 17 and December 8 had been personally served upon defendant in error on December 9, and he not appearing and having failed to show cause why he should not be adjudged in contempt, he was adjudged to be in contempt of court and an attachment was ordered issued to bring his body before the court to show cause why he should not be committed to jail for contempt. Defendant in error was out of the jurisdiction of the court at the time this order was entered and was not arrested under the attachment until April 27, 1914, when he was brought before the court. He was represented by counsel at this time and testified, attempting to justify his failure to comply with the order of the court on the ground of his financial inability to do so. This hearing resulted in defendant in error being adjudged in contempt, and he was committed to the county jail for six months or until he should have paid the alimony found due or until released by due process of law. Defendant in error appealed from that judgment to the Appellate Court. That court reversed the judgment, and on the application of plaintiff in error the case is brought to this court by writ of *certiorari.*

In the bill for separate maintenance plaintiff in error alleges defendant in error is a wealthy man; that he is a promoter and owner of railroads, coal lands and other enterprises, and that he has a financial rating of about $800,000; that he owns bonds of the Kentucky Midland Railroad Company of a par value of $215,000, stock of said railroad of a par value of $61,250 and stock of the Kentucky Midland Coal Company of a par value of $78,900; that he owns stocks and bonds of the Oregon and Southeastern Railroad Company of a par value of about $500,000; that he owns lands in Florida, Colorado, Kansas City and Missouri of a value of several thousand dollars, stock in other corporations of the value of several thousand dollars, and that he carries $100,000 life insurance. In his answer defendant in error admits he owns $215,000, par value, of the bonds of the Kentucky Midland Railroad Company but alleges a large part of them is hypothecated for debts. He admits owning 758 shares of stock of said railroad but avers it is without present value. He admits owning stock in the Kentucky Midland Coal Company and the Oregon and Southeastern Railroad Company but avers it has no value; admits he owns 355 acres of Kentucky coal rights of a value of $15 per acre; that he owns real estate in Florida of a probable value of $400, in Kansas City of a value of $650, 500 acres of land in Missouri of a probable value of $2500, and that he owns 760 acres in Missouri which he had before that time given to his son. He also admits owning stock in other corporations which he alleges is of little or no value. On the hearing in the contempt proceeding he testified that he then owned Kentucky Midland railroad bonds of a par value of $26,000 which were not hypothecated, but he claimed they then had no market value; an equity of about $1100 in 500 acres of incumbered Missouri land; land in Florida of a value of $800 and Kansas City real estate of a value of $600; an equity in an incumbered Minnesota farm of a value of

$1200; 355 acres of Kentucky coal rights, valued at from $6 to $8 per acre, and Oregon and Southeastern railroad bonds which he claimed had no present value. He claimed to be indebted in the sum of $90,000. He testified that he had not been in a position, since the order for the payment of alimony was entered, to pay $150 per month. He admitted that at various times since that decree he had amounts of money, sometimes $200 and sometimes as much as $1500, but that he used it to pay living expenses, office expenses and interest. He admitted a net worth of $35,000 in securities but not in cash. He admitted his ability to pay $750 at the time of the hearing but claimed he was unable to pay more. He testified that his wife had $1600 loaned at interest which he had given her before the suit was begun, and that she had $25,000 of preferred and $25,000 of common stock of the Kentucky Midland Railroad Company which he had given her and that it could be readily sold for $15,000. He further stated that at his request plaintiff in error met him in Milwaukee about two weeks before the hearing in the contempt proceedings; that he desired to make some kind of a settlement with her; that he was able to offer her $5000 in cash, among other things, which he expected to borrow from a wealthy relative, $12,000 or $12,500 in bonds of the Kentucky Midland Railroad Company upon which he would guarantee to redeem the coupons each month at the rate of $50, and in addition he offered to give her the 500 acres of land in Missouri that was incumbered, free from incumbrance, and testified he thought he could buy the 760 acres back from the present owner for less than $12,000. Plaintiff in error admitted that her husband had, before the bill was filed for separate maintenance, given her $1600, but denied she had loaned it. She testified she had used all of it except $200.

We are strongly impressed that the failure of defendant in error to pay the alimony, or any part thereof, was not due to his financial inability to do so but to his disin-

clination to pay it. His business enterprises had been on an extensive scale, and while, undoubtedly, many of the stocks and bonds he owns are worth less than par and some of them have no market value, we are satisfied his means were ample to enable him to pay the alimony awarded. He admits that at various times since the order was entered he has been in possession of sums of money ranging from $200 to $1500, yet he has never paid or offered to pay any sum whatever to plaintiff in error, except the offer of settlement made about two weeks before the hearing. The settlement he then proposed would have required him to raise more money than would have been necessary to pay the alimony. He failed to appear in answer to the rule to show cause why he should not be attached for contempt, for the purpose of showing that his failure to pay was not willful and contumacious but that it was because of his financial inability. When brought in under the attachment, after he had been adjudged guilty of contempt, the showing made in the attempt to purge himself was not of a character to convince the court that he in good faith was unable to make the payment. He not only has not paid or offered to pay anything, but has interposed every obstacle and objection possible to avoid paying. The following language from *Deen v. Bloomer,* 191 Ill. 416, is pertinent to this case (p. 423) : "Counsel attempt to say that the allowance of alimony was too large. It does not appear that this was the reason he failed to comply with the mandate of the court. He did not question the propriety of the allowance but pursued a course which indicated that he acquiesced in the justice of the order. Furthermore, if he had indicated a desire to pay any part of it and the amount had appeared to the court to be unjust because beyond his means and ability to pay, the order was subject to be modified at any time, and doubtless would have been. He during the seven years made no complaint as to the amount of allowance, but only when attached for contempt does he

attempt to resort to that excuse for his failure to comply with the order of the court. The burthen of proof was upon him to show that, acting in good faith and with an honest purpose to comply with the order of the court, he was unable to do so,—and this, we think, the circuit court was justified in finding he failed to do."

Defendant in error sought to avoid the obligation imposed by the decree for alimony *pendente lite,* and the judgment of the Appellate Court affirming the decree of the circuit court fixed that obligation but it did not end his efforts to avoid making the payments. He may have thought himself justified in doing so because of the alleged improper and oppressive conduct of his wife, but that question was settled by the affirmance of the decree for alimony. Whether, as contended by defendant in error, he was authorized, at the time the order of commitment was made, to purge himself of contempt by showing his inability to pay or whether he should have before that time made application to the court for a reduction of the amount is not important to be here decided, for in our opinion he utterly failed to justify his refusal to pay the alimony. It is not denied that in such cases courts of chancery have power to commit for contempt. In *Shaffner* v. *Shaffner,* 212 Ill. 492, it was held that the failure to pay alimony is *prima facie* evidence of contempt, and where it is sought to show that the failure to pay is due to inability, the party must show, with reasonable certainty, the amount of money he has received since the order was made and that it has been disbursed in the payment of expenses which, under the law, he should pay before making any payment on the decree for alimony. Defendant in error's showing of his property and the money received by him since the decree for alimony and the manner in which the money was expended is of a most general character and wholly insufficient. See, also, *Barclay* v. *Barclay,* 184 Ill. 471.

The judgment of the Appellate Court is reversed and the judgment of the circuit court is affirmed.

*Judgment reversed.*

Mr. JUSTICE CARTWRIGHT: I agree with the conclusion reached by the Appellate Court.