# WELLS v. WELLS.

No. 4344. Opinion Filed April 27, 1915.

(148 Pac. 723.)

1. **CONTEMPT—Appeal — Jurisdiction — Procedure.** A proceeding against the defendant in a divorce suit for contempt for willfully refusing to pay alimony and counsel fees ordered by the court is a civil, as distinguished from a criminal, proceeding, and may properly be reviewed in this court upon petition in error and case-made.

2. **DIVORCE—Contempt—"Indirect Contempt"—Disobedience of Order.** The disobedience of an order of the trial court to pay alimony and counsel fees in a divorce suit is an indirect, as distinguished from a direct contempt.

3. **CONTEMPT—Procedure—Parties—Civil Contempt—Criminal Contempt.** A proceeding against one for civil contempt is prosecuted in the original action and in the name of the injured party and for his benefit, while proceedings at law for criminal contempt are between the public and the defendant, and are not a part of the original cause.

4. **DIVORCE—Noncompliance within Order—Right to Discharge.** One adjudged guilty of contempt for failure to pay alimony and counsel fees and ordered to jail until the same are paid "carries the keys of his prison in his own pocket," and can end the sentence and discharge himself at any moment by doing the thing commanded and which he has previously refused to do.

(Syllabus by Galbraith, C.

*Error from District Court, Hughes County;*

*John Caruthers, Judge.*

Suit for divorce by Phoebie Wells against Carl Richard Wells. From an order adjudging defendant to be in contempt for refusal to comply with a judgment and order of the court, he brings error. Affirmed.

See, also, *ante,* or 148 Pac. 725.

*Crump & Skinner,* for plaintiff in error.

*Mann, Rogers & Harris,* for defendant in error.

GALBRAITH, C. This appeal by petition in error and case-made was taken for the purpose of reviewing the judgment and order of the district court of Hughes county adjudging the plaintiff in error to be in contempt for refusal to comply with the judgment and order of that court, entered in a divorce proceeding had therein, directing him to pay the defendant in error $400 alimony and $100 counsel fee.

It appears from the record that the defendant in error, who was plaintiff in the divorce suit, filed in that cause an application for a citation on the defendant, in which is recited the granting the the divorce and the order allowing alimony and counsel fees, and charging that an execution had been issued on the judgment and returned *nulla bona,* and the failure of the defendant to pay said judgment or any part thereof, and praying a citation against him to appear and show cause why he should not be adjudged to be in contempt for failure to comply with said order. The citation was regularly issued and served. In response thereto the defendant answered, admitting that he had not complied with said order, stating that he had been unable to do so, and demanded a jury trial, and the cause was regularly submitted to the jury, and a verdict returned finding the defendant guilty of contempt. The court made the finding of the jury its own and pronounced judgment against the defendant, and, after reciting that he had willfully failed and refused to comply with and obey the order of the court, proceeded as follows:

"It is therefore ordered that the said defendant, Carl Richard Wells, be remanded to the custody of the sheriff and confined in the couney jail of Hughes county and state of Oklahoma, until such time as he complies with the order of this court as heretofore made, and upon his paying said judgment of $400, and $100 attorney's fee in compliance with said order, then he shall be discharged from custody."

It is assigned as error that the verdict and judgment are contrary to the evidence and the law. The only authority cited in the brief in support of this assignment is *Ex parte Curtis,* 10 Okla. 660, 63 Pac. 963, in which it was held:

"A judgment or order of the court that the defendant be committed to the county jail until he obeys said order, and until the further order of the court or judge thereof, * * * is void, for the reason that the duration of sentence is indefinite and uncertain."

This case is not an authority against the judgment appealed from; since the duration of the sentence of confinement in the county jail, as prescribed therein, is definite and certain, namely, until he pays the alimony and attorney's fees.

The case of *Hutchison v. Canon,* 6 Okla. 725, 55 Pac. 1077, a case in which the defendant in a divorce suit refusing to pay alimony, as directed by the court to do, was adjudged to be in contempt on account thereof, and the order of the court was:

"That the defendant be committed to the county jail of said county until the said order of this court is complied with, and the payment of $30 each for the months above mentioned be paid in the case of Hutchison v. Hutchison."

The defendant in that case, instead of appealing from that order, as did the defendant in the case at bar, sought to be released upon a writ of *habeas corpus.* The court, in remanding the petitioner, in the course of the opinion said:

"I think the rule, supported by the weight of authority, is that the power inheres in every court having jurisdiction of the subject-matter to enforce an order, either for temporary or permanent alimony, by attachment and imprisonment, even though such power is not conferred by express statutory enactment."

The case of *Smythe v. Smythe,* 28 Okla. 266, 114 Pac. 257, in which it is held that the respondent in a return to the writ of *habeas corpus* refused to produce the body of a child pursuant to the requirements of the writ, without reasonable excuse, com-

mitted a direct contempt, that is, a contempt committed in the presence of the court, as distinguished from an indirect contempt, one committed out of the immediate presence of the court, and that a proceeding to punish for such a contempt was a criminal proceeding and an appeal therefrom does not lie to this court. This case is easily distinguished from the case at bar, inasmuch as the contempt of which the plaintiff in error was adjudged guilty was an indirect contempt, that is, one not committed in the immediate presence of the court, and for that reason the proceedings against him for such contempt was a civil proceeding.

This action was commenced by the plaintiff in the divorce suit, and as a part of the original action. It was prosecuted between the original parties and for the exclusive benefit of one of them, and not for the purpose of vindicating the authority of the court. The trial court instructed the jury on the theory that it was a civil, as distinguished from a criminal, proceeding. In fact, all the parties seem to have so treated it. We conclude that it was a civil proceeding, and that the appeal was properly prosecuted to this court.

A very interesting and instructive discussion of contempt procedings is found in the course of the opinion of the Supreme Court of the United States in *Gompers v. Buck Stove & Range Co.,* 221 U. S. 418, at page 441, 31 Sup. Ct. 492, at page 498, 55 L. Ed. 797, at page 806, 34 L. R. A. (N. S.) 874, at page 883. The court says:

"Contempts are neither wholly civil nor altogether criminal. And 'it may not always be easy to classify a particular act as belonging to either one of these two classes: It may partake of the characteristics of both.' *Bessette v. W. B. Conkey Co.,* 194 U. S. 329, 24 Sup. Ct. 665, 48 L. Ed. 1002. But in either event, and whether the proceedings be civil or criminal, there must be an allegation that in contempt of court the defendant has disobeyed the order, and a prayer that he be attached and punished therefor. It is not the fact of punishment, but rather its character and purpose, that often serve to distinguish be-

tween the two classes of cases. If it is for civil contempt, the punishment is remedial, and for the benefit of the complainant. But, if it is for criminal contempt, the sentence is punitive, to vindicate the authority of the court. It is true that punishment by imprisonment may be remedial, as well as punitive, and many civil contempt proceedings have resulted, not only in the imposition of a fine payable to the complainant, but also in committing the defendant to prison. But imprisonment for civil contempt is ordered where the defendant has refused to do an affirmative act required by the provisions of an order which, either in form or substance, was mandatory in its character. Imprisonment in such cases is not inflicted as a punishment, but is intended to be remedial by coercing the defendant to do what he had refused to do. The decree in such cases is that the defendant stand committed unless and until he performs the affirmative act required by the court's order. For example, if a defendant should refuse to pay alimony, or to surrender property ordered to be turned over to a receiver, or to make a conveyance required by a decree for specific performance, he could be committed until he complied with the order. Unless there were special elements of contumacy, the refusal to pay or to comply with the order is treated as being rather in resistance to the opposite party than in contempt of the court. The order for imprisonment in this class of cases, therefore, is not to vindicate the authority of the law, but is remedial, and is intended to coerce the defendant to do the thing required by the order for the benefit of the complainant. If imprisoned, as aptly said in *Re Nevitt*, 54 C. C. A. 622, 117 Fed. 451, 'he carries the keys of his prison in his own pocket.' He can end the sentence and discharge himself at any moment by doing what he had previously refused to do.

"On the other hand, if the defendant does that which he has been commanded not to do, the disobedience is a thing accomplished. Imprisonment cannot undo or remedy what has been done, nor afford any compensation for the pecuniary injury caused by the disobedience. If the sentence is limited to imprisonment for a definite period, the defendant is furnished no key, and he cannot shorten the term by promising not to repeat the offense. Such imprisonment operates, not as a remedy coercive in its nature, but solely as punishment for the completed act of disobedience.

"It is true that either form of imprisonment has also an incidental effect; for if the case is civil, and the punishment is purely remedial, there is also a vindication of the court's authority. On the other hand, if the proceeding is for criminal contempt, and the imprisonment is solely punitive, to vindicate the authority of the law, the complainant may also derive some incidental benefit from the fact that such punishment tends to prevent a repetition of the disobedience. But such indirect consequences will not change imprisonment which is merely coercive and remedial into that which is solely punitive in character, or *vice versa.* * * *

"The distinction between refusing to do an act commanded (remedied by imprisonment until the party performs the required act) and doing an act forbidden (punished by imprisonment for a definite term) is sound in principle, and generally, if not universally, affords a test by which to determine the character of the punishment. * * * There is another important difference. Proceedings for civil contempt are between the original parties, and are instituted and tried as a part of the main cause. But, on the other hand, proceedings at law for criminal contempt are between the public and the defendant, and are not a part of the original cause."

Upon these authorities and the record we conclude that the judgment and order appealed from is not contrary to the law, and is not against the evidence. The jury passed upon the facts, and from an examination of the testimony we find that the verdict is fully supported by the evidence. It is shown by the testimony that the defendant not only did not pay the alimony and attorney's fees, as directed by the court to do, but made no effort to pay, and did not even ask the court to reduce the amount in order that he could pay all or a part of it, and altogether displayed a willful indifference to the order of the court. He seemed to have been possessed with the illusion that he did not have to pay if he did not have the money and did not acquire it.

Again, it is complained that the court in its instruction to the jury placed the burden upon the defendant of showing that he had not willfully failed and refused to comply with the

order. This was not error, since the defendant was cited to appear and show cause why he should not be adjudged to be in contempt. The law placed him upon the burden of showing sufficient reason for not having complied with the order of the court.

Again, it is complained that the court erred in forcing the defendant to trial of the case at the April term of the court, after having entered an order continuing the case for the term. An examination of the record shows that on application of the defendant in error the order of continuance was vacated and the cause was set for trial, and that no exception was saved to this order. For that reason this assignment presents no question for review in this court.

We find that the defendant appealed from the judgment in the divorce case, and that the same was affirmed in an opinion filed November 18, 1913. See *Wells v. Wells*, 39 Okla. 765, 136 Pac. 738. That judgment is therefore final. It also appears that the defendant appealed from the judgment and order in the contempt proceedings to the Criminal Court of Appeals, as well as to this court, and that the appeal was there dismissed on the ground that that court had no jurisdiction of the cause, for the reason that the proceedings against the defendant for contempt was a civil proceeding. See *Carl Richard Wells v. State*, 9 Okla. Cr. 326, 131 Pac. 725.

From a careful examination of the record in this case we are convinced that none of the exceptions urged on behalf of the plaintiff in error are well taken, and that they should be overruled.

We therefore recommend that the judgment appealed from be affirmed.

By the Court: It is so ordered.