### FOWLER v. FOWLER.

No. 8041—Opinion Filed Nov. 21, 1916.

(161 Pac. 227.)

**1. Divorce — Decisions Reviewable — Order for Alimony.**

An order allowing alimony pendente lite is not a final order from which an appeal will lie to this court.

**2. Divorce—Alimony—Order—Validity.**

An order for alimony pendente lite is not void because no evidence on behalf of the defendant was heard.

**3. Same—Review—Discretion of Trial Court.**

An order for alimony pendente lite will not be reversed for abuse of discretion by the trial court in refusing to hear testimony offered by the defendant thereon, where the trial court offers to hear such testimony upon a motion to reduce the amount allowed, and no such motion is filed.

**4. Contempt—Presenting Questions in Trial Court—Conduct of Judge—Objections or Exceptions.**

The question of whether the trial court during the trial asked questions indicating his opinion of the guilt of a defendant charged with contempt is not before us for review where no objection or exception was taken to such questions.

**5. Contempt—Argument of Counsel—Prejudice.**

Remarks of counsel in argument examined, and held not prejudicial.

**6. Divorce—Alimony Pendente Lite—Earning Capacity of Defendant.**

In fixing alimony pendente lite, the husband's ability to earn money is an element to be considered.

**7. Same—Disobedience of Order—Contempt.**

A man who has no money or tangible property may be punished for contempt of court in failing to pay alimony adjudged to be paid by him, if he makes no honest effort, considering his physical and mental capabilities, to work and earn money to pay the same.

**8. Trial—Instructions—Applicability to Case.**

It is not error to refuse offered instructions which, though correct as statements of abstract principles, are not applicable to the facts of the particular case.

**9. Trial — Instructions — Requests—Instructions Already Given.**

It is not error to refuse offered instructions which are fairly covered by the general charge given by the trial court.

**10. Appeal and Error — Review — Harmless Error—Instructions.**

A cause will not be reversed for misdirection of the jury unless it appears that the error complained of has probably resulted in a miscarriage of justice or constitutes a substantial violation of a statutory or constitutional right.

(Syllabus by Burford, C.)

Error from District Court, Johnston County; J. H. Linebaugh, Judge.

Action by Roxie Fowler against Guy A. Fowler. From a judgment finding defendant guilty of contempt, he appeals. Affirmed.

Cornelius Hardy, for plaintiff in error.

Robert M. Rainey, for defendant in error.

Opinion by BURFORD, C. Roxie Fowler sued Guy A. Fowler, her husoand, under the statute for separate maintenance. The district judge made an order for the payment of alimony pendente lite, counsel fees, and suit money. Plaintiff in error tailed to pay any part of the amount so ordered to be paid, and thereupon Roxie Fowler, in the original divorce action, applied for and obtained an order to show cause why plaintiff in error should not be punished for contempt. Plaintiff in error answered the rule by averring his inability to comply with tne court's order. He demanded a jury trial, which was granted, and upon the trial was found by the jury guilty of contempt of court. The trial judge thereupon remanded him to jail until he complied with the order of court. After a motion for new trial was filed and overruled, plaintiff in error superseded the judgment by giving a bond and appealed to this court.

The first assignment of error is that the trial court erred in refusing to hear evidence offered by plaintiff in error at the time the order to pay alimony was made. To this contention answer is made that the order allowing temporary alimony was appealable to this court, and that, no such appeal having been prosecuted, the validity of that order is not before us for review, and McKennon v. McKennon, 10 Okla. 400, 63 Pac. 704, is cited in support. That case, however, was expressly overruled by this court in State ex rel. Blackaby v. Cullison, Judge, 31 Okla. 187, 120 Pac. 660, holding that an order granting alimony pendente lite was not appealable. No question is here raised as to whether the judgment in contempt is an appealable order. - See State ex rel. v. Cullison, supra. Such an order was treated as appealable in Wells v. Wells, 46 Okla. 88, 148 Pac. 723, and the question not being raised, we so treat it here.

Assuming that an appeal lies from the judgment in contempt, a serious question arises as to how far we may inquire into the validity or propriety of the original order allowing alimony. It is a principle of universal acceptance that the violation of a void order is not a contempt, and that upon the contempt proceedings inquiry may be made into the actual validity of the order upon which such proceedings are based. But if the order be one not void, but within the power of the court to make, may this court, upon appeal from the judgment in contempt, inquire into the propriety of the original order or determine whether or not the trial court committed reversible error in granting it? A number of the courts have held to the view that in certain classes of cases such an inquiry is permissible. See Alexander v. United States, 201 U. S. 117, 26 Sup. Ct. 356, 50 L. Ed. 686; Ross v. Ross, 47 Mich. 185, 10 N. W. 193; Lester v. State, 150 Ill. 408, 23 N. E. 387, 37 N. E. 1004, 41 Am. St. Rep. 375; Weigley et al. v. People. 51 Ill. App. 51. However, we do not deem it proper to pass directly upon this question, since, under the state of the record, we are proceeding upon an assumption that an appeal lies from the judgment in contempt, and are therefore not inclined to declare a rule as to the scope of that appeal, without definitely passing upon the right of appeal itself. We are not forced to a decision of this point, for the reason that we may assume also the right of review in its broadest comprehension without affecting the ultimate result. The original order was made upon an ex parte hearing at which the trial judge refused to hear the evidence then offered by plaintiff in error. His power to so proceed, it seems, is fixed in principle by the decision in Gundry v. Gundry, 11 Okla. 423, 68 Pac. 509. It was there held that alimony pendente lite might be lawfully granted without notice to the adverse party. If the order may be made without notice to the adverse party, clearly it may be made without hearing evidence in his behalf.

As to an abuse of discretion in refusing to hear the offered evidence, it appears that at the time the trial judge suggested that he would hear testimony upon a motion to reduce the amount allowed, which motion plaintiff in error did not see fit to file. If there was any abuse of discretion in refusing to hear the testimony in the first instance, plaintiff in error had, by offer of the court, an opportunity to have such error corrected, and did not avail himself of it. Under such circumstances we are of opinion that he is not entitled to relief here.

The second assignment of error is upon certain questions propounded by the court which, it is alleged, indicated the court's opinion of guilt of the defendant. This question appears to be not before us, for the reason that no objection or exception thereto appears in the record.

The third assignment relates to certain remarks of counsel in argument as being improper and tending to arouse the passion and prejudice of the jury. A large part of the argument is quoted in the brief, but upon an examination of the record we find that the only remarks to which objection was made are the following:

"Let's go to the defendant and see how he stands in this case. He was a man that

came down here and got married and promised before God and man to support her. Gentlemen, he has this little child whose duty it was to support."

This was objected to as prejudicial, counsel stating:

"The only issue in this case is the question of this man's ability to comply with the court's order, and not one of marriage vows."

The court directed the argument to proceed, exception was taken, and the argument resumed as follows:

"We want to talk about the ability of this man with fairly good education, a man in good health, six feet tall, and weighing 220 lbs.," etc.

We see nothing in the language used justifying an assumption that it was improper. There was no dispute that the defendant was married to the plaintiff. It is true the technical offense was a violation of the court's order, but the order itself was necessarily founded upon the marriage relation and the obligations growing out of it. As is said by Mr. Bishop, in his work on Marriage and Divorce (volume 2, sec. 829):

Alimony "is the necessary consequence of what the unwritten law establishes between husband and wife as to property."

And by the Supreme Court of Ohio in Fickel v. Granger, 83 Ohio St. 101, 93 N. E. 527, 32 L. R. A. (N. S.) 270, 21 Ann. Cas. 1347:

"Alimony * * * is an award by the court upon considerations of equity and public policy, and is founded upon the obligation which grows out of the marriage relation that the husband must support his wife. * * *"

We cannot say that to refer to the duty incumbent upon plaintiff in error, of which the court's order was but the written legal expression, constituted such misconduct of counsel as to justify a reversal.

The next assignment is as to the giving of certain instructions by the trial court. These instructions were as follows:

"You are instructed that the burden is upon the defendant to show to your satisfaction by a fair preponderance of all the evidence that he has complied with said order, or that, failing to do so, he has made an honest and faithful effort to comply, and in considering whether or not he has made such effort honestly and faithfully you may consider whether or not the defendant has applied to the court to have said order vacated, or modified and reduced, or whether or not he has paid in to the clerk any amount to be applied on said order, and whether or not he has in good faith done everything that a reasonable man could do to comply with said order."

"The court instructs you that the fact that the defendant has no property or money at the time of the making of said order would not be sufficient to excuse him from a compliance with the same, but that it is incumbent upon him to make every reasonable and honest effort that he could to comply with said order, and in determining whether or not he has made such honest and faithful effort you may take into consideration his age, his intelligence, his physical condition, and his general capabilities to secure employment and earn money."

"In this case you are instructed that, if you find, by a fair preponderance of the evidence, after taking into consideration all of the facts and circumstances in the case, that the defendant, Guy A. Fowler, has made every reasonable effort that he could have made to comply with said order, that is to say, that he has applied to the court to have said order vacated, or to have the same modified or reduced, or has put forth every effort that was within his power and ability, for one in his condition and circumstances in life, to comply with said order, then it would be your duty to find the defendant not guilty: but if you do not find that he has made an honest effort to comply with said order as above defined to you, then it would be your duty to return a verdict of guilty against the defendant."

"The court instructs you that it was the duty of this defendant to promptly and faithfully comply with said order, and before he will be excused for not having done so he must show to your satisfaction that he has done everything within his power to comply with said order, and that, having put forth every effort that he reasonably could put forth, he has been unable to comply with the same."

We have carefully examined the various errors alleged to be contained in these instructions, and find but one which we think it necessary to discuss in detail. The exceptions to these instructions, taking into consideration the evidence in the case, fairly raise the question as to whether or not a man, without money or property, may be punished as for a contempt for failure to pay alimony pendente lite because he has made no reasonable or honest effort to work and obtain the necessary funds. The evidence in this case showed that plaintiff in error was a young man, of better than average education, large in stature, and, of apparent physical health. There was testimony that he was troubled with an affection of the ear, and that he had a predisposition to Bright's disease, and that he had done but little work during his lifetime, but had lived with his father, who supported and maintained him. His answer to the citation was that he had no property and

had been unable to obtain employment to make money. There was evidence that he had asked several parties for work, but the jury evidently found that he had made no honest or reasonable effort to obtain it. There being evidence from which the jury might reasonably draw this conclusion, we are bound by it. The evidence showed, without contradiction we think, that defendant had not money or property, at least in any amount, either at the time the order was made or prior to or at the hearing on the citation. We have, then, a man without property, who makes no reasonable effort to work and pay the sums directed in an order for alimony pendente lite. May he be punished for contempt?

Upon this question there appears to be considerable conflict in the American authorities. Thus in Messervy v. Messervy, 85 S. C. 189, 67 S. E. 130, 30 L. R. A. (N. S.) 1001, 137 Am. St. Rep. 873, it was held:

"The court cannot compel a husband who has no trade · * * * or employment, to learn a trade, acquire a profession, or find employment, and, by exercise thereof derive an income, to comply with the court's order to pay alimony to his wife, in a suit for separate maintenance."

This decision is based solely upon the proposition that courts do not so attempt to enforce judgments, the court saying:

"If it could do so to enforce payment of a judgment for alimony, why could it not do so to enforce payment of any other judgment? The moral obligation to pay a judgment for alimony may be greater than the obligation to pay any other, but there is no difference in the legal obligation?"

If this be true, it seems entirely inconsistent for the court to say in the same opinion that:

"If the husband is able to comply with the order of the court, and willfully refuses to do so" he may be punished for contempt, and to reverse the cause "without prejudice to plaintiff to apply for further orders as may be proper to compel obedience to the orders of the court if and when appellant is able to comply therewith."

Courts do not enforce judgments by contempt proceedings when the judgment debtor, being able, willfully refuses to pay. If there is no distinction between ordinary judgments and orders to pay alimony, especially orders pendente lite, why does the court reserve the right to punish in contempt for willful refusal? The fallacy of the argument advanced to support the position of the court in the Messervy Case seems to lie in this, that an ordinary judgment at law does not order the defendant to pay anything. It

simply adjudicates the amount owing from defendant to plaintiff and remits the plaintiff to his ordinary remedies by execution or otherwise to enforce payment. On the other hand, an order to pay alimony pendente lite, though partaking also of the nature of a judgment (Hartshorn v. Hartshorn, 67 Oklahoma, 155 Pac. 508), goes further, and is a direct command of the court to the defendant to pay the sums therein mentioned. This command it has been the practice of courts from time immemorial to enforce by proceedings for contempt; some of the authorities going so far as to say that such remedy is exclusive. Whatever, therefore, may be the wisdom of the rule enunciated in the Messervy Case the reason given therefor is, in our judgment, not based upon sound principles.

In Ex parte Todd, 119 Cal. 57, 50 Pac. 1071, the court, without the expression of any reason therefor, or the citation of authority, reversed an order of committal in contempt, saying that:

"This order was clearly in excess of the power of the court, which cannot compel a man to seek employment in order to earn money to pay alimony, and punish him for his failure so to do."

In Webb v. Webb, 140 Ala. 262, 37 South, 96, 103 Am. St. Rep. 30, the Supreme Court of Alabama, affirming an order refusing an attachment for contempt, seems to find the reason for refusing the order rather in the difficulty of accomplishing the desired result than in the power of the court to inflict punishment. It was there said:

"The only remaining insistence is that he is able to work and will not work to earn money to make the payment, and the court ought to commit him for default in this respect. It is difficult to understand how the desired result was thus to be accomplished, and how the court would go about it. If complainant would not labor, the court was without power to inflict corporeal punishment to compel him. If it imprisoned him till he was willing to work, that would not have produced money meantime, but would have entailed expense for the imprisonment; and if imprisoned, and he should relent and come in and signify his willingness to labor, employment would have to be obtained for him by the court, by himself, or some one else; and how the court would have proceeded legally to hire him out, or supervise him, if he hired himself, and collect the money for application of its decree, has not been made to appear."

The force of this objection is hereafter considered.

Upon the other hand, Mr. Bishop, in his work on Marriage and Divorce and Separa-

tion (volume 2, sec. 888 et seq.), in defining the "faculties" which are to be considered in fixing alimony says:

"The husband's faculties are his capabilities of maintaining a family, ordinarily consisting of his income from whatever source derived. But, if he refuses to acquire income, the sum which he might obtain by due exertion is also to be estimated as faculties."

And:

"The husband's duty to maintain his wife does not depend alone on his having visible property. * * * Plainly the husband's ability is the measure of his duty, so that if he exerts himself his actual earnings become faculties for alimony, or if he will not exert himself his capacity for earning must be estimated."

This doctrine is admitted in Messervy v. Messervy, supra, which justifies the rendition of a "judgment for alimony to the wife where the husband has neither property nor income, but is able by the use of his faculties to provide maintenance for her," but classing an order to pay alimony purely as a common judgment, leaves the order enforceable against a working husband, but useless against a lazy and worthless one. We think the law is not so impotent. In Pauly v. Pauly. 69 Wis. 419, 34 N. W. 512, it is said:

"It is proper to say that something more than the present, visible property of the appellant, as a means of such payment, may be considered. The husband's ability to maintain his wife does not depend alone upon his having property accumulated in any of its visible forms.' His ability to earn money must be considered."

Again, it is tersely said by Justice Ruffin, speaking for the Supreme Court of North Carolina, in Muse v. Muse, 84 N. C. 35:

"A husband is not excused from the maintenance of his wife because he lacks an estate. He must labor if need be for her support; and, if reluctant, it is fortunate that it happens in this instance that he may be compelled to do so."

The Supreme Court of California in an earlier case than Ex parte Todd, supra (Galland v. Galland, 44 Cal. 475, 13 Am. Rep. 167), found the defendant had applied his available earnings to the payment of alimony adjudged, but in considering the power of the court stated what, in our opinion, is the true rule to be observed, as follows:

"It is our opinion, however, where one is called before a court to answer for contempt for not doing an act which he has been adjudged to do, inquiry may properly be had as to whether it is still in his power to do it, and, if it be not, he should not be adjudged guilty, unless he has voluntarily and con-

tumaciously disabled himself from doing it. Ex parte Cohen, 6 Cal. 318."

And in State v. District Court et al., 37 Mont. 485, 488, 97 Pac. 841, 842, 15 Ann. Cas. 941, the court said:

"In our opinion, inability to render obedience to such an order is a good defense to a charge of contempt for its violation, unless it appears that the person charged has voluntarily and contumaciously brought the disability upon himself."

It appears to us, however, that refusing or willfully neglecting to work is "contumaciously disabling" himself from obeying the order of the court, just as much as a fraudulent transfer of property or the like would be. As was said in Myers v. Trimble, 3 E. D. Smith (N. Y.) 612:

"Courts will not adjudge a defendant in contempt for not doing an impossibility, nor for not doing what it is not in his power to do, unless he has voluntarily disabled himself to do the act where the creation of the disability was itself a contumacious act."

Upon the particular facts and legal questions involved in the case at bar Lansing v. Lansing, 41 How. Prac. (N. Y.) 248, is closely in point. It there appeared, as here, that the defendant was a young man who had not "apparently made any effort to earn money to make such payment, but had lived with and been supported by his father." Defendant's answer showed that he had since the making of the order no means and no property but wearing apparel. The court, however, refused to discharge him, saying:

"He has lived with his father, and his labor must have been worth something. It is not shown that he is a man of feeble or infirm health, and I do not understand why he has not been able to earn $200 per year, and pay the amount to his wife.

"It may be that he has not real or personal property, except his clothing, but why has he none; has he been idle since the decree? If not, where are his earnings? If he had no property when the decree was granted, then it was his duty to try to earn something, he had no right to lay idle, and, because he could live at his father's house, therefore refuse to work and to support his wife."

In the case at bar the jury found that defendant had made no honest effort to obtain work, and, there being evidence from which they might fairly draw that conclusion, we are bound by it. In this view of the instant case the principles above quoted upon very similar facts are applicable.

In Lester v. Lester, 63 Ga., 357, the court, in considering a question similar to that here involved, said:

"If a man, though having health, will not work for the support of his wife and minor children, a court cannot assume direct control of his will and muscle and compel him to labor. To do this would be to reduce him to a sort of juridical slavery, and would contradict the spirit of our institutions. To be idle (taking the consequences) is one of the privileges of a freeman, unless he is convicted penally of some offense and put to work as a punishment. But, while a civil court cannot order an able-bodied man to go to work, it can, in a proper case for alimony, order him to contribute so much money at such and such times to the maintenance of his dependant family, and leave him to provide the money by the free and voluntary exercise of his faculties, mental and physical, or by any other means at his command. If it is not reasonably and fairly within his power to comply with the order, he may disobey it, and the court must and will excuse him. But it is not a sufficient excuse to say, 'I cannot raise the money unless I work for it,' nor, 'although I can raise the money by my labor I cannot save that much over and above my expenses, unless I practice a more rigid economy than is agreeable to me.' "

The court there refused to discharge the judgment to pay or be imprisoned.

Again, in Staples v. Staples, 87 Wis. 592, 58 N. W. 1036, 24 L. R. A. 433, the Supreme Court of Wisconsin had under consideration a commitment for contempt for failure to pay alimony. The defendant pleaded that he was without funds or property and unable to borrow. The trial court found that he had "in no way controverted the fact of his ability as an able-bodied man to earn and accumulate money," and committed him to jail until the sum adjudged was paid. It also appeared that he had said he would pay nothing. The appellate court said:

"Imprisonment certainly should not be ordered when it appears that the default is the result of honest inability to pay, on account of business misfortunes, or lack of health or earning ability, or other circumstances which are not the fault of the defendant. But where the inability is willfully brought about by defendant himself, with intent to avoid payment, the refusal to pay becomes contumacious, and the inability so resulting will not purge the defendant of contempt. The present case seems clearly one of contumacious refusal to pay."

The judment of committal was affirmed.

The same view was taken by this court in Wells v. Wells, 46 Okla. 88, 148 Pac. 723, where it was said:

"It is shown by the testimony that the defendant not only did not pay the alimony and attorney's fees, as directed by the court to do, but made no effort to pay, and did not even ask the court to reduce the amount in order that he could pay all or a part of it, alto-gether displayed a willful indifference to the order of the court. He seemed to have been obsessed with the illusion that he did not have to pay if he did not have the money and did not acquire it."

We might well content ourselves with merely following the doctrine there expressed, but, owing to the importance of the question, we have seen fit to enter into a more extended inquiry as to the reasons and grounds therefor.

Referring finally to the difficulty found by the California court in the matter of punishment set out in Ex parte Todd, supra. If the right to punish for contempt in this class of cases exists, and we hold that it does, we are loath to restrict the right upon considerations of the remedy. In this class of cases, civil contempts, the punishment ordinarily is, as in this case, that the defendant be confined until he complies with the order of the court. If, as here, the defendant is without property, naturally he cannot ordinarily labor in jail and acquire the money to comply with the court's order. Nor can the court let him out to hire in any sort of judicial peonage. But, upon the other hand, the order of confinement is always within the discretion of the trial court. We assume that the power of that court will not be used oppressively. If it should be, clearly relief may be afforded here. It may well be that in such cases as this, even in the jail, the defendant, through his own efforts, or that of his friends, may find hitherto overlooked resources or employment available upon his release. Such employment being found, and the defendant expressing a willingness to accept it, we have no doubt the trial court would release him that he might thereby comply with the order. The difficulty of the mode of punishment is not so great that we regard it as insuperable, and therefore a deterrent to the exercise of the right to punish. The result is well illustrated in the present case. The defendant, although asserting he was utterly without means or resources, within a few hours after being confined found two sureties (among whom it is to be noted his father did not appear) willing to trust him to the extent of signing a bond in the sum of $2,000, conditioned to pay the alimony and costs adjudged in the original order, if the present judgment be affirmed. Our views upon this question of punishment are better expressed than is within our power by Mr. Justice Bleckley, speaking for the Supreme Court of Georgia in Lester v. Lester, supra:

"It is the common practice of husbands and fathers wherever civilization prevails, to supplement or supply deficient pecuniary means

of support for their families with their personal exertions, and to so curtail their own expenses as to leave something for the wife and minor children. Whatever may be the theoretical difficulties of maintaining a family on the labor of one man, with such casual assistance\as his wife and young children can afford, practically all' such difficulties are overcome so generally that there is a reasonable presumption of the ability of any able-bodied husband and father to contribute something for the support of his wife and each minor child. Here there was an entire cessation to respond, with anything, to the order for alimony. The suspension was complete; every cent was withheld. And there was some appearance of doubtful faith in the shape óf co-operative dealings with the relations. We cannot say that the judge, under the circumstances, abused his authority in not accepting the respondent's answer as satisfactory, and in ordering an attachment for contempt. The attachment will bring the actual resources of the respondent to a practical and decisive test. Pressure is a great concentrator and developer of force. Under the stress of an attachment, even the vision of the respondent himself may be cleared and brightened, so that he will discern ways and means which were once hidden from him, or seen obscurely. It is a great help to do a thing to feel that it must be done, and that there is no evading it. Harsh as was the old remedy of imprisonment for debt, it had this wholesome effect in many cases, and was, so far, a beneficent instrumentality. While the imprisonment which impends over the respondent is not for debt ([Strait v. Strait] 9 Reporter, 109; [Thweatt v. Kiddoo] 58 Ga. 300; [Smith v. McLendon] 59 Ga. 523; [Carlton v. Carlton] 44 Ga. 216), it can be prevented by the same means as if it were; that is, by payment. In reducing him to the alternative of prompt payment each month or of being attached, the judge has put the respondent on the vantage side of all his resources, whatever they may be. Another consideration to which we look is that such orders are subject to modification from time to time; and we will not anticipate that, if the respondent really becomes willing to render obedience and proves unable, there will be any further exaction made of him at the expense of his liberty."

Upon the instructions given as a whole, and upon counsel's contention that defendant by working could not have paid the amount required within the time limited, the language of the Supreme Court of Illinois in Deen v. Bloomer, 191 Ill. 416, 422, 61 N. E. 131, 133, is pertinent and is adopted herein. The court there said:

"It may be conceded that he was not at all times able to pay the whole of the monthly allowance, but his affidavit and his letters fail to show that he made an honest effort to pay it, while, on the other hand, they and the other evidence adduced tend to indicate a willful neglect to pay not only the whole, but even a small part of it. .

"Counsel attempt to say that the allowance of alimony was too large. It does not appear that this was the reason he failed to comply with the mandate of the court. He did not question the propriety of the allowance, but pursued a course which indicated that he acquiesced in the justice of the order. Furthermore, if he had indicated a desire to pay any part of it, and the amount had appeared to the court to be unjust because beyond his means and ability to pay, the order was subject to be modified at any time, and doubtless would have been. He during the seven years made no complaint as to the amount of the allowance, but only when attached for contempt does he attempt to resort to that excuse for his failure to comply with the order of the court. The burden of proof was upon him to show that, acting in good faith and with an honest purpose to comply with the order of the court, he was unable to do so, and this, we think, the circuit court was justified in finding he failed to do."

Upon the whole we are of opinion that the instructions given were a fair statement of the law, and not prejudicial to the rights of the defendant.

The final assignments are upon instructions offered and refused. The first of these instructions offered was as follows:

"Gentlemen of the jury, you are instructed that under the law the father of the defendant has no legal obligation to loan to the defendant or pay to the clerk of the court for the defendant the alimony, attorney's fees, or suit money ordered by the court to be paid by the defendant in this cause."

Plaintiff in error's father was introduced as a witness in his behalf. Upon direct examination he volunteered statements to the effect that his son had applied to him for loans and he had been unable to accommodate him. On cross-examination the trial court permitted, over objection, certain questions as to the father's wealth. No question as to the admission of this testimony is raised in the brief. The above instruction was offered evidently with this testimony in view. Ordinarily, of course, the question of the parent's wealth was wholly immaterial. The instruction offered was correct, and the trial court could have given it in this particular case without error. It appears, however, from the record that the testimony upon cross-examination was admitted more as affecting the credibility of the witness in giving his testimony in chief than for the purpose of bringing up any question of the father's responsibility for the son's obligations. We think this is fairly inferable from the court's remarks in overruling the objection to the cross-examination. The arguments of counsel are in the record, and from an examination of them it appears that counsel ex-

pressly disclaimed any contention that the father was liable for or under any obligation to pay the sums set forth in the order for alimony. Under section 6005 of the Code we are precluded from reversing a cause for misdirection of the jury unless "it appears that the error complained of has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right." Under the state of the record we are unable to say that the refusal of this instruction probably resulted in a miscarriage of justice.

The defendant also offered the following instruction, which was refused:

"Gentlemen of the jury, the defendant has a right to retain out of his income or earnings a sufficient sum for his own subsistence or maintenance before paying into court the money ordered as alimony, and is not guilty of contempt of court in so doing."

This instruction, though perhaps a correct statement of the law applicable to some cases, is not correct as applied to the facts of the case at bar. The testimony showed that the defendant was living with and being supported by his father. Though there was no legal obligation upon the father to assume this burden, it sufficiently appears that his affection for his son had prompted him to do so. Under such circumstances we think the defendant might well have devoted all of his earnings or the earnings which he could have made to the support of his wife, at least so far as comprehended by the order of the court. His support was apparently secure without applying any of his earnings thereto. We see no legal difference in this regard between support derived from investments or labor and support derived from a parent. Suppose an ancestor had by his will provided that his executors should sufficiently support defendant out of the deceased's estate. Should he not then, being himself provided for, devote his earnings to his family? Is there any difference where the support, though not required by law, is voluntarily furnished by one living? We think not. Had defendant lived to himself and upon his own earnings, the case might be different. Inasmuch as he has the good fortune to be provided for without labor, we see no reason why his wife should not receive the entire benefit of his labor which, from the verdict of the jury, we take it he can perform. Some of the cases heretofore referred to involve similar states of fact, and will, we think, be found to support our conclusions that the refusal of this instruction in this particular case was not error.

Finally the following instructions were offered and refused:

"Gentlemen of the jury, you are instructed that before you can find the defendant guilty of contempt in refusing to obey the order of the court you must find by a preponderance of all the evidence in the case that the defendant's failure to pay the alimony, attorney's fees, and suit money was contumacious, showing a resolve to disobey or defeat the order of the court. If you find that the defendant's failure to comply with the order was due to his inability from business misfortunes, lack of health or employment, or other extenuating circumstances, you will return a verdict in favor of the defendant finding him not guilty.

"Gentlemen, you are instructed that, if you find that the defendant is unable to comply with the order of the court in this cause, you cannot find him guilty unless you further find that he voluntarily and contumaciously disabled himself to comply with the order, and has endeavored to obtain employment or the money to comply with the order, but has been unable to do so; you will return a verdict in favor of the defendant finding him not guilty of contempt."

These instructions were covered, in substance, in the charge of the court. It is true the trial court did not use the word "contumacious," but he did, we think, fairly and clearly define the circumstances applicable to the case, under which the defendant would not be guilty of contumacy and consequently of contempt. Where offered instructions are fairly covered in the general charge, it is not error to refuse them.

We find no reversible error in the record, and conclude that the judgment should be affirmed.

By the Court: It is so ordered.