Wilburn JOHNSON, Plaintiff in Error,

v.

Theresa JOHNSON, Defendant in Error.

No. 37110.

Supreme Court of Oklahoma.

Dec. 24, 1957.

Tom Finney and Ed Shipp, Idabel, for plaintiff in error.

Arnett & LeForce, Idabel, for defendant in error.

JACKSON, Justice.

The parties are designated as they appeared in the trial court.

This appeal is taken by Wilburn Johnson, defendant, in a divorce action pending in the District Court of McCurtain County, from a judgment and order of commitment

ordering that he be confined in the County Jail until he shall have purged himself of contempt by paying the sum of $4,050 to his wife, Theresa Johnson, the plaintiff.

Action for divorce was commenced on March 19, 1954. On March 20, 1954, the trial court entered an ex parte order by which the defendant, Wilburn Johnson, was ordered to pay $250 per month as temporary alimony and child support, together with an additional $300 as temporary attorney's fee. Defendant made no payments for a period of one year, whereupon plaintiff caused a citation to be issued in March of 1955, and the contempt action was tried to the court on June 27, 1955.

The evidence disclosed the following facts: The defendant is and was at all times involved herein a strong, able-bodied, full-blood Indian but never worked more than one week during the eight years of marriage. For the greater part of the married life of the parties they lived with and were supported by defendant's mother who died approximately six weeks prior to the institution of the divorce action. Thereafter plaintiff and the minor children were supported by plaintiff's father. From the date of the temporary order to the date of plaintiff's last application for citation, defendant received $2,000 as advances towards his distributive share of his mother's estate, but paid no part of this to plaintiff. The only excuse offered was that this money was used to pay pre-existing debts. However, it further appeared that the defendant made no effort to secure employment.

In our opinion the trial court was clearly justified and, indeed, compelled to hold defendant in contempt. The burden was upon defendant to prove that he was unable to comply with the order and that he had made an honest effort to do so. Wells v. Wells, 46 Okl. 88, 148 P. 723. So far as reflected by the record the defendant made absolutely no effort to comply with the order.

A more complex question is presented in considering whether the trial court exceeded its authority in imposing continuous confinement in this case. The defendant was ordered to stand "committed to the county jail and kept in close confinement until he shall have paid to the plaintiff" the total sum of $4,050.

The evidence established that at the time of the trial the defendant had no funds with which to pay such amount. He did have an interest in his mother's estate but no final distribution had been made and even if such distribution were made he could not obtain any part of it without the approval of the Indian Department. Therefore, in order to obtain the money and gain his release he would first be compelled to make application for a partial distribution to the County Court, and then obtain the approval of the Indian Department which might or might not be granted.

Indefinite conditional commitments of this nature are upheld on the theory that the defendant "carries the keys of his prison in his own pocket."

In Wells v. Wells, supra, it is held in the fourth paragraph of the syllabus:

"One adjudged guilty of contempt for failure to pay alimony and counsel fees and ordered to jail until the same are paid 'carries the keys of his prison in his own pocket,' and can end the sentence and discharge himself at any moment *by doing the thing commanded and which he has previously refused to do.*"

Can it be said that the defendant in the case at bar "carries the keys of his prison in his own pocket?" We think not because it does not appear that he can do the thing commanded by his own volition, and without the assistance of others.

Whether he can secure the necessary funds with which to gain his release depends upon more than his own will and the sentence imposed could possibly result in life imprisonment, notwithstanding every effort on his part to comply with the court's order.

In some jurisdictions a present inability to pay all of the past due installments is a

complete defense even though the past due installments could have been paid as they matured. Snook v. Snook, 110 Wash. 310, 188 P. 502, 9 A.L.R. 262. A closely related question is presented in cases where the defendant is unable to pay the installments as they become due because of the fact that he refuses to work. Here again there are some jurisdictions in which such refusal to work is considered an inalienable right and not punishable by contempt proceedings. Messervy v. Messervy, 85 S.C. 189, 67 S.E. 130, 30 L.R.A.,N.S., 1001. These are extreme views. However, this court in the case of Fowler v. Fowler, 61 Okl. 280, 161 P. 227, L.R.A.1917C, 89, adopted an equally extreme view in the opposite direction. In the Fowler case this court properly held that a husband's refusal to work in order to pay alimony and child support is contemptuous and punishable. But the case further holds that refusal to work and absence of an honest effort to comply with the order will justify commitment until all delinquent sums are paid, notwithstanding the fact that the defendant has no apparent means of paying such amount while confined in jail. This latter rule is contrary to the better considered cases and the apparent weight of authority, as will be hereinafter shown, and, in our opinion, constitutes an abandonment of the practical and humanitarian considerations involved in cases of this kind, and we hereby overrule the Fowler case insofar as it conflicts with the views expressed in this opinion.

The rule as announced in the Fowler case would apply even though the defendant's sole means of obtaining the necessary funds was his ability to work which he obviously could not do while in jail. It is fundamental that the confinement in cases of this kind should be coercive in nature. Hadley v. Hadley, 129 Okl. 219, 280 P. 1097. In the Fowler case the court properly concluded that the defendant was in contempt for failure to work but imposed a type of punishment completely inappropriate to this particular type of contempt.

If at the time of trial the defendant has the means at his disposal with which to pay past due sums, but refuses to do so, an order of commitment confining him to jail until he pays such sums is proper and has the desired coercive effect. If, on the other hand, the defendant does not have the means to pay said sums and his only contemptuous conduct is a failure to seek employment, such a commitment has no coercive effect so far as compelling him to do that which he has contemptuously failed to do. It could well have the reverse effect.

The only justification for an indefinite conditional commitment is based upon the assumption that the defendant can do the thing commanded. In the case at bar the defendant could apply for a partial distribution but what happens if he is unsuccessful? In the Fowler case it was observed that in such an event the District Court would *probably* release the defendant. An individual's freedom should not be the subject of speculation. Inasmuch as the order of commitment is not expressly so qualified, we cannot assume as a matter of law that the defendant would be released upon proof of his unsuccessful efforts, and it is manifestly more expedient and proper to clarify this point on appeal rather than postponing it to some possible future time upon a writ of habeas corpus hearing before this court.

As hereinabove noted, in the majority of cases where the *form* of the sentence has been discussed, it is held that where the defendant is unable to pay the amount due at the time of trial (having failed to work and exert all possible efforts), an indefinite commitment until payment of all sums due is unauthorized. In Wohlfort v. Wohlfort, 116 Kan. 154, 225 P. 746, 749, 40 A.L.R. 538, the court made a cogent analysis of the problem. In that case the court said:

"The extreme views are illustrated by Messervy v. Messervy, 85 S.C. 189, 67 S.E. 130, 30 L.R.A.,N.S., 1001, 137 Am.St.Rep. 873, which holds the court cannot 'compel a husband, who has no trade or profession or employment, to learn a trade, acquire a profession, or find employment, and by the exercise thereof, derive an income' to comply

with the court's order to pay alimony to his wife in a suit for her separate maintenance. And by Fowler v. Fowler, 61 Okl. 280, 161 P. 227, L.R.A. 1917C, 89, * * *.

" * * * But an order committing to jail is the exercise of the ultimate power of a court of equity, and the prudent chancellor is careful that there be no mistake in its use. * * *. The form of the commitment may be important. If the husband has the amount of money he has been ordered to pay, and contemptuously disobeys the order, his commitment should be until he pay, for in that case he has the means to obtain his own release; by making the payment the jail is unlocked to him. If he does not have the money, and has no property which he can readily convert into money, it is obviously improper to commit him until the money is paid. Such a commitment under those circumstances would be indefinite imprisonment, from which the husband could never release himself. It would not be proper to hold him in jail until the sheriff or some one could find him, say a day's work on the road, then let him out to work that day, his earnings to be paid to the wife, then take him back to jail until another day's work or week's work could be found. Such a procedure would amount to involuntary servitude, without conviction for crime, and would be in effect an imprisonment for debt, in violation of the spirit, at least, of both our federal and our state Constitutions. But, as we have previously observed, the fact that the husband does not have money or property does not relieve him of his marital duty to provide for his wife. If he is capable of performing physical or mental labor, and such work as he is capable of doing is available to him, by the doing of which he can earn money to maintain his wife, and where this is clear, and it further clearly appears his refusal is willful to such a degree

as to be contumacious, amounting to contemptuous disobedience, not only of his marital obligations, but of reasonable orders of the court, then the chancellor has power, and it becomes his duty, to issue the commitment. In such a case the commitment should not be until a specific sum is paid, but it should be until the husband purges himself of contempt by expressing in good faith a willingness to do what he reasonably can do to earn money to maintain his wife. Under such a commitment the husband has within his own breast the key for his release from prison, and his imprisonment is not involuntary."

In Ex parte Hamberg, 37 Idaho 550, 217 P. 264, the court said:

"The judgment was that said Hamberg be confined in jail until the sum of $309 be paid. The return of the sheriff recited that petitioner was held in pursuance of the commitment of the district court.

"While the findings do not show that petitioner ever affirmatively committed any act to render himself unable to comply with the decree of the court, they do show that he did not make sufficient effort to earn the necessary money to pay the alimony, and that he could have earned sufficient money had he made an effort to do so. However, it is nowhere set forth in the findings that, at the time of the commitment, petitioner was able to pay the amount due. Under such circumstances, therefore, was it lawful to imprison petitioner indefinitely?

" * * * To justify the imprisonment of a person until he has performed an act, it must appear that the performance of the act 'is yet in the power of the person to perform.' * * In adjudging that petitioner be *indefinitely* imprisoned for his failure to pay the stated amount of alimony, without finding that petitioner, at the time of the sentence, could pay the said sum,

the district court exceeded its power. * * *."

The following cases are in accord. Ex parte Todd, 119 Cal. 57, 50 P. 1071; Ramsay v. Ramsay, 125 Miss. 185, 87 So. 491, 14 A.L.R. 712 (opinion set aside on suggestion of error on other grounds).

We are of the opinion that the sentence imposed in the instant case should be vacated.

If the only contemptuous act on the part of the defendant had been his failure to make application for partial distribution, it would have been proper to commit him until he made such application. Such form of commitment is apparently suggested in Wohlfort v. Wohlfort, supra [116 Kan. 154, 225 P. 750]. However, in this connection we must state that the suggested language for the form of commitment in that case is entirely too broad in requiring only a good faith expression of "willingness to do what he reasonably can do" as a condition of discharge. But in the instant case, in addition to the defendant's failure to make the application, he also failed to seek employment. This conduct cannot go unnoticed.

In Ramsay v. Ramsay, supra, a case involving the defendant's failure to seek employment, the court held that it was proper to impose a fine but in this state we have held that the sentence imposed is not to vindicate the dignity of the court but should be remedial and coercive in nature. Hadley v. Hadley, supra [129 Okl. 219, 280 P. 1098]. In the Hadley case we further held that a fixed imprisonment "not conditioned on a continued failure to pay the sums cannot be made." However, this holding does not prohibit a fixed sentence if it is conditioned in such a manner that the defendant can gain his freedom at any time by paying the amount ordered by the court. A fixed sentence so conditioned would obviously have a coercive effect to the end of forcing the defendant to make the application. If he were unsuccessful in obtaining the funds and forced to serve the entire term so fixed, then upon his release it is equally certain that he would feel more inclined to secure employment in order to comply with future orders of the court.

The only objection to such a commitment is that it is possible the defendant could not obtain the funds and would not carry the "keys in his pocket." This objection is technically sound, but the possibility of being forced to serve a fixed sentence, which is reasonable, does not shock the conscience of a court so long as there is a possibility that defendant will not serve any part of it. On the other hand, the possibility of being confined to prison for life, or at least an indefinite time in a case of this nature, and despite good faith efforts by the defendant to comply with the court's order, impresses us as oppressive and unreasonable.

The judgment of the trial court in holding defendant in contempt is affirmed. The order committing defendant to jail indefinitely is vacated, with instructions to the trial court to reconsider its order of commitment in light of the views herein expressed and, if necessary, impose a fixed commitment reasonably sufficient in duration to provoke an honest effort on the part of the defendant to comply with the court's order.

However, if it now appears to the trial court that defendant has made, or is making, an honest effort to comply with the court's order; or that financial assistance to the plaintiff and the children would be more readily available by entering a new order, the trial court may take evidence and do so under its continuing jurisdiction.

WELCH, C. J., CORN, V. C. J., and DAVISON, JOHNSON, WILLIAMS and CARLILE, JJ., concur.

HALLEY and BLACKBIRD, JJ., dissent.