MRS. BIRDIE M. GOING v. L. C. GOING.*

(*Jackson.* April Term, 1923.)

1. **COURTS.** Constitutional questions being involved, jurisdiction of appeal in supreme court.

Constitution al questions being set up in the demurrer and answer to the petition, and insisted on by defendant in his brief on appeal, and discussed in the opinion of the court of civil appeals, jurisdiction was in the supreme court, and the cause should have been transferred to it. (*Post, p.* 530.)

2. **CERTIORARI.** Case considered by supreme court as on appeal where court of civil appeals erroneously refused to transfer it.

Where the appeal involved jurisdictional questions, so that jurisdiction thereof was in the supreme court, it will, on *certiorari* to review the decree of the court of civil appeals, which erroneously refused to transfer the cause as required by Acts 1909, chapter 192, consider the case as on appeal. (*Post, p.* 530.)

Acts cited and construed: Acts 1909, ch. 192.

Cases cited and approved: Going v. Going, 144 Tenn., 303; Mayer v. Mayer, 154 Mich., 386; Sampson v. Sampson, 16 R. I., 456;

---

*On inability to pay alimony as defense to contempt proceedings, see notes in 24 L. R. A., 437; 30 L. R. A. (N. S.), 1001 and L. R. A., 1917C, 97.

On inability to comply with judgment or order to pay alimony as defense to contempt, see note in 22 A. L. R., 1260.

On power to modify alimony awarded by a decree of absolute divorce in absence of reservation by decree or statute, see note in L. R. A., 1917F, 729.

On question of effect of second marriage on payment of alimony, see notes in 62 L. R. A., 974 and L. R. A., 1915F, 820.

On modification of alimony because of changed conditions, see note in 44 L. R. A. (N S.), 1026.

Livingston v. Livingston, 173 N. Y., 377;  Kamp v. Kamp, 59 N. Y., 220;  Erkenbrach v. Erkenbrach, 96 N. Y., 456;  Ruge v. Ruge, 97 Wash., 51;  Bilbo v. Allen, 51 Tenn., 31;  Chenault v. Chenault, 52 Tenn., 248;  Railroad v. Byrne, 119 Tenn., 278;  Campbell County v. Wright, 127 Tenn., 26;  Clements et al. v. Roberts, 144 Tenn., 152.

Constitution cited and construed:  Art. 1, sec. 18, Art. 13, sec. 1.

Code cited and construed:  Sec. 4896 (S.).

3.  **APPEAL AND ERROR.**  No power to impose other than statutory condition for appeal.

Appeal from chancellor's decree on executing bond as required by Shannon's Code, section 4896, for specific amount of money decreed, with damages and costs, is a matter of right; so that further condition imposed by chancellor, that appellant pay further sums of alimony as they become due each month, is ineffectual. (*Post*, *pp.* 531, 532.)

4.  **APPEAL AND ERROR.**  Opinion on former appeal law of the case though point of exception to rule was not called to court's attention.

The opinion on former appeal that, after the divorce decree became final by expiration of the term at which it was rendered, in the absence of a reservation of authority therein, the chancellor could not modify its provisions for alimony, is the law of the case, on a second appeal, though the point of there being an exception to the rule because of rights and interests of minor children being involved was not called to the court's attention. (*Post*, *pp.* 532-534.)

Cases cited and approved:  Ruge v. Ruge, 97 Wash., 51;  Spain v. Spain, 177 Iowa, 249;  City of Bristol v. Bostwick, 146 Tenn., 205. Case cited and distinguished:  Alexander v. Alexander, 13 App. D. C., 334.

5.  **DIVORCE.**  Under facts and circumstances, held payment of permanent alimony should not be enforced by attachment for contempt.

Judgment for permanent alimony, which has become final, should not be enforced by attachment for contempt, a remedy other than

specifically provided by Code 1858, section 2470 (Shannon's Code. section 4223), it not being one of the "other lawful ways and means" which are usual and according to the course of practice of the court; the husband, fifty-years old, having remarried, and having a wife and minor stepchild to support, and having no estate, but being dependent on the practice of his profession, and the divorced wife, forty-four years old, having since the divorce secured employment and received property from the estates of her father and brother. (*Post, pp.* 534-566.)

Cases cited and approved: Wetmore v. Markoe, 196 U. S., 68; Audubon v. Shufeldt, 181 U. S., 575; Welty v. Welty, 195 Ill.. 335; Lewis v. Lewis, 80 Ga., 706; Staples v. Staples, 87 Wis.. 592; In re Popejoy, 26 Colo., 32; Bronk v. State, 43 Fla., 461; Barclay v. Barclay, 184 Ill., 375; State v. Cook, 66 Ohio St., 566; In re Cave, 26 Wash., 213; Lennahan v. O'Keefe, 107 Ill., 620; Cole v. Cole, 142 Ill., 19; Foote v. Foote, 22 Ill., 425; Stillman v. Stillman, 99 Ill., 196; Carlton v. Carlton, 44 Ga., 216; Keyes v. Scanlan, 63 Wis., 345; Lansing v. Lansing, 4 Lans., 377; Strobridge v. Strobridge 21 Hun, 288; Park v. Park, 18 Hun, 466; White v. Bates, 89 Tenn., 570; Watson v. Campodonico, 3 Higgins, 698; Cavenaugh v. Cavenaugh, 106 Ill. App., 209; State ex rel. v. Brown, 31 Wash., 397; Ryer v. Ryer, 33 Hun, 116; Fowler v. Fowler, 61 Okla., 280; Messervy v. Messervy, 85 S. C., 189; Webb v. Webb, 140 Ala., 262; Ex parte Todd, 119 Cal., 57; Chadwick v. Chadwick, 170 App. Div., 328; People ex rel. Levine v. Shea, 201 N. Y., 471; Shaffner v. Shaffner, 212 Ill., 492; Nipper v. Nipper, 133 Ga., 216; Ramsey v. Ramsey, 125 Miss., 185; Williams v. Williams, 146 Tenn., 38; Taylor v. Taylor, 144 Tenn., 311; Lynch v. Lynch, 10 Prob. Div. 183; Bates v. Bates, 14 Prob. Div., 17; In re Kinsolving, 135 Mo. App., 631; Coughlin v. Ehlert, 39 Mo. 285; Segear v. Segear, 23 Neb., 306; Leeder v. State, 55 Neb., 133; Marsh v. Marsh; 162 Ind., 210; Allen v. Allen, 72 Iowa, 502; Baily v. Baily, 69 Iowa, 77; North v. North, 39 Mich., 67; Adams v. Adams, 80 N. J. Eq., 175.

Cases cited and distinguished: Welty v. Welty, 195 Ill., 335; Lewis v. Lewis, 80 Ga., 706; Ramsey v. Ramsey, 125 Miss., 185; De

Going v. Going.

Lossy v. De Lossy, 15 Prob. Div., 115; Ex parte Davis, 101 Tex., 607; Williams v. Williams, 146 Tenn., 38.

Code cited and construed: Sec. 2470 (1858); Sec. 4223 (S.).

## FROM SHELBY.

Appeal from the Chancery Court of Shelby County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court.—HON. F. H. HEISKELL, Judge.

EWING, KING & KING and L. W. TAYLOR, for appellant.

JACKSON, NEIL & McREE and W. C. RODGERS, for appellee.

MR. MALONE, Special Judge, delivered the opinion of the Court.

This is an appeal from a contempt proceeding to enforce the payment of alimony.

This case was heard by this court on another phase of the litigation at a previous term, and the opinion of the court, delivered at the April term, 1921, is reported in 144 Tenn., 303, 232 S. W., 443.

As appears from the statement of facts made in that case, the complainant, Mrs. Birdie M. Going, on June 24, 1919, filed her original bill against her husband, L. C. Going, in the chancery court of Shelby county, seeking a divorce from him on the grounds of adultery and of abandonment and failure to provide. No defense was made to this bill, and an order *pro confesso* was taken against the husband. The case was finally heard on July 11, 1919,

at which time the chancellor decreed an absolute divorce to the wife, allowing custody of their two minor children, a boy aged seventeen years, and a girl aged fourteen years, and, after reciting "that the defendant is a man of learning and ability, with large earning capacity, and the petitioner is practically without means, and is now working to support herself and family," further decreed:

"That the defendant, L. C. Going, as permanent alimony, pay to the petitioner, Mrs. Birdie M. Going, the sum of $4,000 cash, which has this day been done, and the receipt of which is acknowledged, and that the said L. C. Going pay into the hands of the clerk and master of this court on July 1, 1920, the sum of $1,800 for the support and maintenance of the petitioner, Mrs. Birdie M. Going. and that the said L. C. Going also pay into the hands of the clerk and master of this court, for the petitioner, the sum of $150 per month, beginning August 1, 1920, and on the 1st of every month thereafter during the lifetime of the petitioner."

Thereafter, on the 30th day of July, 1920 (erroneously said to be on the 24th day of June, 1919, in the reported case, 144 Tenn., 304, 232 S. W., 443) L. C. Going filed a petition seeking by said petition to have the decree rendered July 11, 1919, vacated or modified on the ground that there had been a change in the status of the parties since the rendition of said decree warranting such action. In this petition it was alleged that one of the children had married; that the family expenses had been greatly reduced; that the wife had come into the possession of certain property from her deceased father's and brother's estates, which, together with certain property given to her by the petitioner prior to the granting of the divorce, and

the permanent alimony decreed to her by the court in the divorce proceeding, was sufficient for her support. The petitioner prayed to be relieved from paying any other or further sums to the complainant under said decree, or that said decree at least be modified so as to relieve petitioner from a portion of the payments thereby required.

On August 17, 1920, Mrs. Going answered the petition of her former husband, showing the property which had come into her possession from the estates of her father and brother since the divorce was granted, as well as the property received from the petitioner prior to granting the divorce, and denying that the income from said property, including payments to be made by petitioner under the decree, was more than sufficient to support herself and her unmarried daughter, then fifteen years of age, and living with her mother in the city of Memphis.

On November 23, 1920, before the petition of Mr. Going had been acted upon, Mrs. Going filed her petition in the case, alleging that the husband had never paid the $1,800 which the court decreed he should pay on or before July 1, 1920, but had willfully refused to pay this sum, and had also wilfully refused to pay her the monthly sum of $150 since August 1, 1920, as provided by the decree.

The petition was supported by affidavits alleging that the said L. C. Going had willfully disobeyed the decree of the court, and was therefore in contempt, and prayed for an attachment of his body, and that he should be required to answer and show cause why he was not in contempt of court.

Mr. Going answered this petition, setting forth his reasons for failing to pay the $1,800, together with subsequent

installments, and insisting that he was not in contempt of court on account of this failure.

On February 4, 1921, the cause was heard before the chancellor on the two petitions and the answers thereto, the testimony of witnesses introduced in open court, and the original record in the cause, including the final decree for divorce, and the chancellor was thereupon of opinion that "there is no reason for modifying or changing the terms of the former decree, and that the petition of L. C. Going is not supported by the evidence." And, after reciting that the said L. C. Going was in arrears in the payment of alimony in the sum of $2,850, the court further decreed:

"That the petition of L. C. Going be, and the same is hereby, dismissed, and he is hereby ordered and directed to pay into the hands of the clerk and master of this court the sum of $2,850 within ten days from this date, and appeal is hereby granted, provided the said L. C. Going shall enter into a bond with good and solvent sureties in the sum of $3,500 to secure the payment of the amount of alimony now in arrears and the costs, in the event he fails in his appeal, and provided further that, beginning with the 1st day of February, 1921, he pay into the hands of the clerk and master for the benefit of Mrs. Birdie M. Going the sum of $150 on the 1st day of every month pending the appeal from this decree, and until it is finally determined by the supreme court of Tennessee."

L. C. Going excepted to the decree, and prayed an appeal to this court, which was granted, as provided above. Subsequently, by order entered on the same day, Mr. Going was allowed to substitute a $2,500 note in lieu of the $3,500 appeal bond ordered by the chancellor. There-

after, on February 10, 1920, Mr. Going executed a bond, with personal surety, for $250, to cover the costs of the appeal.

Two points were considered by this court on that appeal:

(a) The right of the chancellor to modify a final decree for alimony, payable in installments, after the adjournment of the court, where such decree makes no reservation in this behalf.

(b) The action of the chancellor in requiring the petitioner to execute a $3,500 bond, or deposit with the master of the court the $2,500 note "as a condition to his right to appeal."

Disposing of the first point, the court said at page 308 of 144 Tenn., at page 444 of 232 S. W.:

"We think the decree of the chancellor must be affirmed. The authorities generally sustain the proposition that a decree for alimony in a case *a vinculo*, made without reserve, although payable in installments, cannot be changed or altered after such decree becomes final, which is after the adjournment of court. *Mayer* v. *Mayer,* 154 Mich., 386, 117 N. W., 890, 19 L. R. A. (N. S.), 245, 129 Am. St. Rep., 477; *Sampson* v. *Sampson,* 16 R. I., 456, 16 Atl., 711, 3 L. R. A., 349; *Livingston* v. *Livingston,* 173 N. Y., 377, 66 N. E., 123, 61 L. R. A., 800, 93 Am. St. Rep., 600; *Kamp* v. *Kamp,* 59 N. Y., 220; *Erkenbrach* v. *Erkenbrach,* 96 N. Y., 456; *Ruge* v. *Ruge,* 97 Wash., 51, 165 Pac., 1063, L. R. A., 1917F, 721, and the cases there cited.

"There is no reservation in the decree in the instant case giving the court the right to modify it as to alimony. We have no statute in this State which gives the court any such authority. The decree was rendered more than a year before the present petition was filed by the hus-

band, and had become final. Like other final decrees, it was beyond[1] the control of the court, and could not be modified at a subsequent term.

"It would seem that the rule is different in cases of an allowance of alimony granted in conjunction with a divorce *a mensa et thoro*. In such cases a modification may be made, even in the absence of statutory authorization, inasmuch as power to amend such an award existed at common law. R. C. L., section 92; 60 Am. Dec., 668, note."

Disposing of the second point, the court said at page 310 of 144 Tenn., at page 444 of 232 S. W.:

"We are of the opinion that there is no error in the action of the chancellor requiring the execution of the bond referred to. It is expressly provided by section 4896 of Shannon's Annotated Code as follows:

" 'Where decrees are for a specific sum of money and against the party in his own right, the appeal bond shall be for the amount of the decree and damages and costs.'

"The foregoing section has reference to decrees or judgments in the chancery court. *Bilbo* v. *Allen*, 4 Heisk., 31, 34; *Chenault* v. *Chenault*, 5 Sneed, 248.

"Having elected to deposit with the master the $2,500 note in lieu of the execution of the bond for $3,500, appellant cannot complain."

The result was to affirm in all respects the decree of the chancellor.

On the remand of the case the complainant, Mrs. Going, on the 15th day of August, 1921, filed her petition in the cause for the purpose of having an attachment of the defendant Going for contempt in failing to pay the amounts fixed by the original decree of July 11, 1919, and the subsequent decree of February 4, 1921. The defendant

L. C. Going demurred to this petition on the following grounds:

"(1) That so much of the original decree entered herein on July 14, 1919, as attempted to reach and affect the future earnings and accessions of the original defendant, L. C. Going, was and is a nullity and incapable of enforcement by the aid of this court or any other.

"(2) The decree heretofore entered in said cause on the 14th day of July, 1919, which is relied on as the basis for the petition for contempt filed, is a final judgment, and as such is a debt, and, being a debt, is incapable of enforcement by contempt proceedings, because such proceedings carry the power of imprisonment and it would be in violation of the Constitution of this State to imprison the demurrant for failure to pay said debt.

"(3) This said decree being a final judgment, and the time during which the court might exercise jurisdiction over same, or the subject-matter thereof, having elapsed, it is beyond the jurisdiction or control of this court and is not now subject to addition or modification by any procedure, especially as the complainant has a plain and adequate remedy by execution which is provided in said decree.

"(4) That so much of said decree entered in said cause on February 4, 1921, as attempted to adjudge and decree to Mrs. B. M. Going the sum of $150 per month to be paid by L. C. Going, is void and unenforceable, because the court had no jurisdiction to make such an award at that time, there being no marital relations existing between the parties, nor any marital obligations resting upon either one to the other, they having been divorced *a vinculo*.

"(5) So much of said decree dated February 4, 1921, as attempted to require said L. C.. Going to pay $150 per month pending his appeal therefrom to the supreme court, was also void and unenforceable for the reason that the court had no jurisdiction over said cause after the perfection of said appeal, and had no power to control or attempt to control the same after an appeal.

"(6) The decree relied on herein being dated July 14, 1919, provides a strictly legal remedy, and provides a technically legal right, which is accompanied with such circumstances of oppression and injustice that a court of equity will not lend its aid in enforcement of such unconscientious advantage."

The demurrer having been overruled, the defendant filed an answer to the contempt petition, in which he denied that he had willfully disobeyed the orders of the court, and in which he averred his inability to comply with these orders.

In this answer the defendant relied upon article 1 of section 18 of the Constitution of Tennessee, which prohibits imprisonment for debt, on the theory that said contempt proceeding was merely a proceeding to imprison defendant for failure to pay said installments of alimony which had become, by said decrees, final judgments, and therefore debts.

For further defense, he relied upon the Thirteenth Amendment to the Constitution of the United States, prohibiting slavery or involuntary servitude, his contention in this behalf being as follows:

"Defendant further pleads that the effort to compel him by a decree of this court to pay through contempt proceedings, the said unpaid sums of $150 per month con-

tinuously through his life with the alternative of impris-
onment on his failure to pay, is an effort to impose upon
him involuntary servitude in violation of article 13, sec-
tion 1, of the Constitution of the United States, which
reads: 'Neither slavery or involuntary servitude, except as
a punishment for crime, whereof the party having been
duly convicted, shall exist within the United States, or
any place subject to their jurisdiction.'

"Defendant pleads that the decree of the court compels
him to serve the complainant month by month, year in
and year out, against his will during the whole of his
life. He pleads that such threatened imprisonment held
over him is both unconstitutional and void, as before
stated."

Thereafter, on December 27, 1921, the chancellor made
a decree on this petition, reciting the contents of the orig-
inal decree of July 11, 1919; that for six months prior to
the filing of complainant's petition for contempt defend-
ant had made no payments under said decree; that for
said period he was able to pay $50 per month, or a total
of $300; that by reason of his failure to pay said amount
he was in contempt of court; and it was thereupon de-
creed:

"That he be committed to the Shelby county jail until
said sum of $300 is paid, or further orders of this court,
and that a *mittimus* for this purpose issue."

The defendant excepted to this decree on various
grounds, and prayed and was granted an appeal to the
court of civil appeals, which appeal was granted on con-
dition that he give bond in the sum of $500, conditioned
for the payment of said $300 and the costs of the cause,
and "on the further condition that L. C. Going pay into

the hands of the clerk and master of this court the additional sum of $50 on the 1st day of each month pending the appeal of this cause."

The complainant, Mrs. Going, appealed to the court of civil appeals from the decree in so far as it failed to adjudge that her former husband should have paid $900, instead of $300, as adjudged by the chancellor, and this appeal was granted on the execution of a cost bond.

Before taking up the argument of the case before the court of civil appeals the appellant, Mr. Going, made a motion to transfer the case to this court, which was as follows:

"Comes one of the appellants, L. C. Going, defendant below, and for the purpose of calling this court's attention to the constitutional questions involved in this cause moves the court to transfer the same to the supreme court, where said cause properly belongs.

"(1) Because the construction of the Constitution of Tennessee, article 1, section 18, is directly in issue in this cause, and, under the holdings of our supreme court in the cases of *Railroad* v. *Byrne,* 119 Tenn., 278, and *Campbell County*.v. *Wright,* 127 Tenn., 26, this court has no jurisdiction over this question.

"(2) Because the construction of article 13, section 1, of the Constitution of the United States is also directly involved, and (said section is) required to be construed by the issues presented in said cause, and this court has no jurisdiction to dispose of said constitutional questions.

"(3) Because the further question of criminal offense is charged and is directly in issue in said cause, this court has no jurisdiction over criminal matters.

"Wherefore L. C. Going respectfully moves this honorable court to transfer said cause to the supreme court, where it properly belongs, for final disposition."

The court of civil appeals, however, overruled this motion, and delivered a carefully considered opinion, in which the contentions of the appellant, L. C. Going, were overruled, and the appeal of Mrs. Birdie M. Going sustained from that part of the chancellor's decree which denied a recovery of $900, etc.; and the chancellor's decree was accordingly modified so as to require the appellant, ·L. C. Going, to pay the full amount in arrears, and it was adjudged that he be held in custody until this was done.

L. C. Going has filed his petition for *certiorari* to review the decree of the court of civil appeals, insisting, in the first instance, that that court was without jurisdiction, and that his motion to transfer the cause should have been sustained.

I. We are of opinion that the court of civil appeals should have sustained the motion to transfer the case to this court. Constitutional questions were set up in the demurrer and in the answer of the defendant, Going, as hereinbefore noted, were insisted on in the brief filed in the court of civil appeals, and the learned opinion of that court consists, in great part, of a discussion of these constitutional questions, which are substantial and not merely colorable. Under such circumstances the jurisdiction is in this court. *Clements et al.* v. *Roberts,* 144 Tenn., 152, 231 S. W., 902; *Campbell County* v. *Wright,* 127 Tenn., 1, 6, 151 S. W., 411; *Railroad* v. *Byrne,* 119 Tenn., 278, 325-329, 104 S. W., 460.

The case will accordingly be considered as if on appeal. *Campbell County* v. *Wright,* supra; Acts 1909, chapter 192.

II.   It is insisted on behalf of the appellee, Mrs. Going, that the appeal should be dismissed because the certificate of the clerk and master shows that the appellant, L. C. Going, has not complied with the condition imposed by the chancellor of paying $50 per month alimony, etc.

We think the chancellor had no power to impose such a condition.   As stated by this court in the original opinion herein (144 Tenn., 310, 232 S. W., 443), it is expressly provided by Shannon's Compilation, section 4896:

"Where decrees are for a specific sum of money and against the party in his own right, the appeal bond shall be for the amount of the decree and damages and cost."

The appeal from the chancellor's decree was a matter of right upon the execution of an appeal bond conditioned as required by the statute.

The chancellor doubtless based his action upon a misconstruction of the court's previous opinion in this case; but the court did not, in that case, intend to hold that the chancery court had power to impose other conditions than those fixed by the specific terms of the statute relating to appeals.

The motion to dismiss the appeal is therefore overruled and disallowed.

III.   Coming now to the merits of this controversy:

(1) It was, of course, settled by the previous opinion of this court that the chancellor had no authority to modify the terms of the divorce decree, in the absence of a reservation of authority contained in such decree.   That such is the weight of authority, in the absence of statute, is clearly shown by the review of cases, and the reporter's note, in the case of *Ruge* v. *Ruge* (1917), 97 Wash., 51, 165 Pac., 1063, as reported in L. R. A., 1917F, 721.

It is, perhaps, unfortunate that this should be so. The *status* of the parties is subject to constant change, and there is much to be said (as pointed out in the dissenting opinion of CHADWICK, J., in the foregoing case) in favor of the right of the court to modify such a decree, even in the absence of a reservation.

And see the strong opinion of MORRIS, J., in the case of *Alexander* v. *Alexander* (1898), 13 App. D. C., 334, 45 L. R. A., 806.

In the present case, moreover, this court might have found an exception to the rule, on the ground that the rights and interests of minor children were involved. Thus, in *Ruge* v. *Ruge,* supra, the court, in a learned opinion, attempts to classify the conflicting cases, and, with regard to the cases involving support and maintenance of minors, says:

"This class includes cases where there are minor children of the parties to the divorce action, and the courts of all the States are at one upon the proposition that so far as the decree of alimony is for the benefit of the minor children of the spouses, the power to modify the decree continues so long as there are minor children under the protection of the court. While in cases dealing with this aspect of the question the courts have not always paused to state the fundamental principle upon which the right to modify is based, it is manifest in reading them that the dominant thought and controlling circumstance in the cases is the fact that there are minor children to be cared for as wards of the court. As it seems to us, the true basis upon which the power to modify the decree in these cases rests is that out of the marital relations springs a new relationship, viz. that of parent and child. Palpably

neither executive edict, enactment of legislature, nor de-
cree of court can change the relationship existing between
parent and child. The courts may decree that the marital
tie shall be absolutely severed and the parties be placed,
so far as the law is concerned, in the same situation that
they occupied prior to the solemnization of the marriage
ceremony; but they cannot alter or modify the fact that
a father is the parent of his offspring. This parental re-
lationship springing as it does from the relationship of
marriage is to this extent incident to the marital *status.*
But the duty of the father, if he has means with which to
do so, to support his infant children, springs immediately
from the parental relationship. As this relationship, in-
cidental, as it is to the marriage state, continues to exist
after the *status* out of which it arose has been terminated,
either naturally as by death or artifically as by divorce,
the duty incident to that continuing relationship still
exists. The right of the wife to alimony arises immediately
out of the marriage contract, but the right of the child to
support at the hands of its parents springs from the in-
cidental relationship which had its origin in marriage,
to-wit, that of parent and child. The court therefore, act-
ing upon this relationship as one of the things brought to
it by the divorce action, has the power to modify or alter
its decree so long as there are minor children under the
protection of the court."

And see the full discussion of this matter in *Spain* v.
*Spain* (1916), 177 Iowa, 249, 158 N. W., 529, as reported
in L. R. A., 1917D, 319, Ann. Cas., 1918E, 1225, with an-
notation.

This point does not seem to have been brought to the
court's attention on the previous appeal, and is not men-

tioned in the opinion. But, in any event, that opinion is the law of this case on the present appeal, and we must proceed on the theory that the chancellor had no power to modify the terms of the original decree. *City of Bristol* v. *Bostwick,* 146 Tenn., 205, 210, 240 S. W., 774.

(2) Should this judgment for permanent alimony, beyond the power of the chancellor to alter, be enforced by contempt proceedings?

On behalf of the appellant, it is contended that such a judgment becomes a debt, which is to be collected by execution like any other debt, or at most by sequestration of the husband's property, or the appointment of a receiver as provided by our statutes on the subject, and that to enforce its collection by contempt proceedings would violate section 18 of article 1 of the Tennessee Constitution, which provides:

"The legislature shall pass no law authorizing imprisonment for debt in civil cases."

On behalf of the appellee, it is contended that permanent alimony, although the decree has passed out of the control of the chancellor, is not, properly speaking, a debt, but a portion of the husband's estate equitably due the wife, or in the nature of a penalty for his misconduct. and that the husband's obligation may be enforced by imprisonment without violation of our constitutional provision.

(a) Our statutes on the subject of enforcing a decree for alimony are carried into the Code of 1858 in section 2470 (section 4223 of Shannon's Compilation), which reads as follows:

"*Decree for Alimony, How Enforced.*—The court may enforce its orders and decrees by sequestering the rents and profits of the real estate of the husband, if he has any,

and his personal estate and choses in action, and by appointing a receiver thereof, and from time to time causing the same to be applied to the use of the complainant and her children, or by such other lawful ways and means as are usual and according to the course and practice of the court, as to the court shall seem meet and agreeable to equity and good conscience. (1801, ch. 6, sec. 3; 1835-36, ch. 26, sec. 10."

As will be noted, our statute does not provide for an attachment for contempt as a method of enforcing the collection of alimony; and it may be further noted that there is no reported case, since the enactment of this section of the Code of 1858, or the passage of the Acts of 1801 and 1835 on which it is based, which upholds the exercise of such a power.

(b) It is, however, contended on behalf of the appellee that an attachment for contempt in such cases is one of the "other lawful ways and means" which are "usual and according to the course and practice of the court," even after the expiration of the term at which the decree was rendered.

In support of this contention, reference is made to certain standard text-books, or encyclopedias, and to certain cases decided by other State courts, and by the United States supreme court, especially the cases of *Wetmore* v. *Markoe* (1904), 196 U. S., 68, 25 Sup. Ct., 172, 49 L. Ed., 390, 2 Ann. Cas., 265, and *Audubon* v. *Shufeldt,* 181 U. S., 575, 21 Sup. Ct., 735, 45 L. Ed., 1009.

These two cases, it may be observed, both deal with the same question, viz. whether alimony is a debt provable in bankruptcy, and therefore to be evaded by taking the Bankrupt Act (U. S. Comp. St., sections 9585-9656). In

the Audubon case, the decree was rendered in a court which had control over it, with full power to amend or alter. In the Wetmore case, the decree rendered by one of the courts of New York was concededly beyond the power of the court to alter or amend.

Whatever was said by the United States supreme court in these opinions must be considered in the light of the actual question under consideration and the actual point decided, and is, obviously, not a decision so far as it is sought to be applied to a contempt proceeding. The actual decision in each case was that alimony, not being based on contract, was not a provable debt in bankruptcy.

The appellee also relies on the text of 1 Ruling Case Law, p. 960, where it is said:

"Even after the expiration of the term at which a decree for permanent alimony was granted (*Welty* v. *Welty,* 195 Ill., 335, 63 N. E., 161, 88 A. S. R., 208), payment thereof may be enforced by an order committing the husband for contempt of court (*Lewis* v. *Lewis,* 80 Ga., 706, 6 S. E., 918, 12 A. S. R., 281; *Staples* v. *Staples,* 87 Wis., 592, 58 N. W., 1036, 24 L. R. A., 433, and note; 17 A. S. R., 272, note; 137 A. S. R., 875, note) owing to the fact that alimony does not constitute a debt within the meaning of that term as used in the usual constitutional inhibition against imprisonment for debt." *In re Popejoy,* 26 Colo., 32, 55 Pac., 1083, 77 Am. St. Rep., 222; *Bronk* v. *State,* 43 Fla., 461, 31 South., 248, 99 Am. St. Rep., 119; *Barclay* v. *Barclay,* 184 Ill., 375, 56 N. E., 636, 51 L. R. A., 351; *State* v. *Cook,* 66 Ohio St., 566, 64 N. E., 567, 58 L. R. A., 625; *In re Cave,* 26 Wash., 213, 66 Pac., 425, 90 Am. St. Rep., 736; 24 L. R. A., 434, note.

We have, for convenience in the quotation, associated directly with the text the citations in the footnotes.

These authorities will now be examined.

In the case of *Welty* v. *Welty,* 195 Ill., 335, 63 N. E., 161, 88 Am. St. Rep., 208, the decree of divorce provided that—"The defendant Robert A. Welty shall pay to the said Catherine Welty $25 on the first day of each month for a period of eight months, commencing June 1, A. D. 1899, and continue until the sum of $200 is paid, said sum to be in lieu of and in full for alimony and in full of all other claims of any kind or nature."

On June 13, 1900, at a subsequent term of the court, the defendant, R. A. Welty, was committed to jail for contempt in failing and refusing to pay alimony.

Answering the contention that after final judgment the jurisdiction of the court was exhausted, the court says:

"This contention also is without force. It has always been the law in this State that a decree for alimony is subject to modification by the court, in which the decree was entered, according to the varying circumstances of the parties. *Barclay* v. *Barclay,* 184 Ill., 375, 56 N. E., 636. Section 18 of the Divorce Act provides that 'the court may, on application, from time to time, make such alterations in the allowance of alimony and maintenance, and the care, custody and support of the children, as shall appear reasonable and proper.' 2 Starr & Curt. Ann. Stat. (2d Ed.), p. 1449. Under this section of the statute the court is invested with power to declare the termination of all alimony upon the occurrence of facts reasonably justifying such a declaration. *Lennahan* v. *O'Keefe,* 107 Ill., 620. In *Cole* v. *Cole,* 142 Ill., 19, 34 Am. St. Rep., 56, 31 N. E., 109, we said [142 Ill., 23, 34 Am. St. Rep., 56, 31 N. E., 109]:    'The

power over the subject-matter of alimony is not exhausted by the entry of the original order, but is, under the statute, continuing, for the purpose, at any time, of making such alterations thereof as shall appear to the chancellor, in the exercise of a judicial discretion, reasonable and proper.' *Foote* v. *Foote,* 22 Ill., 425; *Stillman* v. *Stillman,* 99 Ill., 196, 39 Am. Rep., 21; *Lennehan* v. *O'Keefe,* 107 Ill., 620."

As will be observed, the court in that case had power under the specific terms of a State statute to modify the decree at any time, and the decision is based on that statute.

The case of *Lewis* v. *Lewis,* 80 Ga., 706, 6 S. E., 918, 12 Am. St. Rep., 281, was an attachment for contempt because of failure to comply with a final decree giving the wife alimony. The opinion is quite meager, cites no authority, and does not show whether the court retained jurisdiction of the case in the final decree, nor whether the motion for an attachment was made at the trial term or at a subsequent term of the court.

The case deals chiefly with the husband's contention that to allow an attachment would be to authorize imprisonment for debt. On this point it is said:

"We are of the opinion that, when a court directs the payment of alimony by a husband to his wife, it is a duty he owes, not only to his wife, but to the public, to comply with the order; and if he fails to perform that duty, we see no reason why the court cannot compel him to do so by an order of attachment, directing his imprisonment in the event of his failure to comply with the order. Of course this is a power which should be carefully and cautiously exercised, and before granting the writ the court

ought to be satisfied that there is good ground for the attachment; and such appears to have been the case here. This is a case in which the old adage applies, that 'when a bird can sing and will not sing, he must be made to sing.'. When it appeared to the court that this defendant had the money to comply with the decree, and that he failed to comply with it, we think the court had the right and the power to imprison him until he did comply with it."

It is further tó be observed that the Georgia constitutional provision, with regard to imprisonment for debt, seems to exclude cases of contempt. *Carlton* v. *Carlton*, 44 Ga., 216, 220.

In the case of *Staples* v. *Staples* (1894), 87 Wis., 592, 58 N. W., 1036, 24 L. R. A., 433, the wife obtained judgment for divorce *a vinculo* on March 25, 1892, and was awarded the custody of an infant child. By the terms of the decree the husband was directed to pay the wife, as alimony, $150 annually, in equal quarterly installments; also the sum of $32 alimony *pendente lite,* which he had previously failed to pay. The husband paid none of these sums, and in September, 1893, a motion was made to punish him for contempt for his failure to pay, the whole amount then due being $257.

It was insisted by the husband that, since a judgment for alimony might be enforced by execution, and since contempt proceedings for nonpayment of money are only authorized where execution cannot be awarded, no contempt proceeding would lie. Replying to this argument, the court says:

"Were the judgment here a judgment for a gross sum, payable at once, it might undoubtedly be docketed as a

money judgment, and execution might issue to enforce. it. *Keyes* v. *Scanlan,* 63 Wis., 345. In that case the argument would be strong that contempt proceedings could not be resorted to, and the position would not be without authority. *Lansing* v. *Lansing,* 4 Lans., 377. This decision, however, has been seriously questioned in New York. *Strobridge* v. *Strobridge,* 21 Hun, 288. But conceding the correctness of the doctrine, it cannot apply to the present case. Execution can be issued only on a judgment which has been docketed. Revised Statutes, sections 2968, 2969. It does not appear in the present case that any judgment has been docketed for any of the installments of alimony. In fact, there seems to be no provision of law for such docketing. A judgment is to be docketed at the time of filing the judgment roll. Id. section 2899. The remarks of the court in *Park* v. *Park,* 18 Hun, 466, upon this point, are quite pertinent. It is there said: 'It is not explained, however, in that case (referring to *Lansing* v. *Lansing,* supra), how a judgment for final alimony is to be docketed—whether or not a new docket is to be made every time the annual or semi-annual alimony becomes payable. And as a judgment is made a lien only for ten years from the filing of the roll and docketing, it is not clear how, after ten years from the judgment, the amounts of the alimony are to be docketed so as to be a lien on land. And docketing is necessary before the issue of execution. Besides, after the lapse of five years from the entry of judgment, execution is to issue only by leave of the court, granted on notice. How this provision is to apply to alimony is not explained in that decision. This reasoning was concurred in by the court of appeals in the same case. *Park* v. *Park,* 80 N. Y., 156. Our con-

148 Tenn.—35

clusion is that contempt proceedings will lie to compel payment of installments of alimony ordered to be paid in the future by a final judgment of divorce."

Here, again, as will be noted, nothing is said as to the power of the court over the decree at a subsequent term, and the point of the decision seems to be that a judgment for alimony could not, under the peculiar statutes of Wisconsin, be enforced by an execution.

The contrary seems to be true in this State. See White v. *Bates,* 89 Tenn., 570, 572, 573, 15 S. W., 641; *Watson* v. *Campodonico* (Tex. Civ. App.), 3 Higgins, 698, 702, 709.

In the case of *In re Popejoy* (1899, 26 Colo., 32, 55 Pac., 1083, 77 Am. St. Rep., 222, the wife recovered against the husband a money judgment for separate maintenance. On his failure to pay this judgment he was committed for contempt of court, and applied for a *habeas corpus* to test the legality of his imprisonment. Nothing appears as to the court's control over the decree.

This case, moreover, does not deal with alimony at all, but with separate maintenance.

The case of *Bronk* v. *State,* (1901), 43 Fla., 461, 31 South., 248, 99 Am. St. Rep., 119, was another *habeas corpus* proceeding, brought by the husband because a writ of *ne exeat* had been issued, requiring him to procure bail in the sum of $10,000 immediately on the filing of the bill, and before any alimony had been awarded to the wife.

It is therefore evident that whatever was said by the court as to imprisonment for failure to pay alimony must have been said *arguendo.*

In the case of *Barclay* v. *Barclay* (1900), 184 Ill., 375, 56 N. E., 636, 51 L. R. A., 351, the wife, on June 27, 1899, filed a contempt proceeding against her husband, alleging

that by the terms of a decree "awarded to her for the payment of alimony in her suit for separate maintainance" the sum of $532 was due from the defendant. The husband filed an answer, averring that on July 5, 1899, he had filed his petition in bankruptcy scheduling the claim of the wife.

The supreme court, on appeal, held that the judgment for alimony was not a provable debt in bankruptcy, and that the defendant was subject to contempt proceedings.

As heretofore shown, the statute of Illinois gives the trial court full power and jurisdiction on the subject of alimony, even after the expiration of the term at which the original decree was rendered.

In the case of *State, etc.,* v. *Cook* (1902), 66 Ohio St., 566, 64 N. E., 567, 58 L. R. A., 625, the wife filed her petition, alleging extreme cruelty and gross neglect of duty on the part of the husband; that he had abandoned her without cause; "and that in consequence thereof, and of ill treatment on his part towards her, the parties had separated, and that by reason of the premises she was entitled to alimony out of the estate and property" of the husband, and to judgment therefor.

The court thereupon decreed that the husband pay $400 as alimony in the following manner: $50 in thirty days from October 3, 1896, and $50 in each six months thereafter until the full amount was paid. More than thirty days having elapsed since the maturity of the sum of $50 payable in thirty days from October 3, 1896, and no part thereof having been paid, the wife filed a contempt proceeding against the husband, and he was adjudged guilty of contempt, and committed to jail.

Although the case is, apparently, treated in the opinion as a contempt proceeding for failure "to pay a final judgment for alimony," it would appear that the case was not one of an absolute divorce, but rather of a separation; and it is not shown that the court had lost jurisdiction of the case, or even that the order was made after the expiration of the term.

The appellee also relies upon the text of 19 C. J., 299, 300, where it is said that:

"The power to enforce a decree for permanent alimony by attachment for contempt belongs inherently to a court having jurisdiction of divorce suits, even after the expiration of the term at which the decree was rendered."

But while many cases are cited in the notes to the first proposition ("the inherent power of the court," etc.), only one case is cited to sustain the proposition that attachment may be issued after the expiration of the term, viz. the case of *Canenaugh* v. *Cavenaugh* (1902), 106 Ill. App., 209 erroneously cited as 106 Ill.), in which case (page 212) the court "expressly reserved the power to change the order as to the alimony and had jurisdiction of the subject-matter." The court, moveover, follows *Welty* v. *Welty*, supra, which, as already pointed out, is based on the Illinois statute.

(c) We have analyzed these authorities to demonstrate that matters of divorce and alimony are largely regulated by statute in the various States of the Union, and that it is very difficult to lay down a broad and comprehensive rule on such matters, and say that it is supported by the weight of authority. The weight of authority, indeed, does support certain propositions—for example, the proposition

that alimony is not a debt the payment of which may be escaped by taking the Bankrupt Act, or the proposition heretofore discussed that after the expiration of a term the court loses control of the decree, in the absence of a reservation in the decree, or a statute giving such control.

(d) But we are unable to say that the weight of authority supports the proposition that after a decree becomes fixed and out of the control of the chancellor it may, at any subsequent term, be enforced by contempt proceedings, irrespective of the changed condition of the wife.

To maintain the broad proposition advanced by the appellee in this case, it would be logically necessary to hold that, though the wife may have become independently wealthy since the rendition of the decree, and though it might grind the husband to the bone to continue his payments, he must, nevertheless, continue such payments or be imprisoned for failure so to do, even though this be merely to satisfy the vengeance of the divorced wife.

It is argued that the case of *Williams* v. *Williams,* 146 Tenn., 38, 236 S. W., 938, justifies such a contention. We do not so understand that case. The court says at page 41, of 146 Tenn., at pages 938 and 939 of 236 S. W.:

"Counsel have displayed much learning and research on the subject of divorce and alimony, and have drawn upon the ecclesiastical law and decisions of numerous courts in various jurisdictions in support of their respective arguments. No authoritative case directly in point appears to have been discovered. Indeed the subject is one which must be governed by our statutes and by the interpretations that have been put upon them by previous decisions of the court. It seems quite clear upon principle

and authority that the right to alimony must be found in the statutes, and the amount thereof fixed upon the considerations named in the statute. We are therefore led directly to this source for the knowledge of the. law by which the rights of these parties must be determined."

It thus appears that the decision of this court turned on the application of the Tennessee statutes to a particular case, and was not intended to formulate a rule of law to the effect that a wealthy wife may, under all circumstances, exact alimony, and compel its payment.

This is shown by the further language of the court at page 45 of 146 Tenn., at page 940 of 236 S. W.:

"We conclude, although the statute does not impose upon the court the imperative duty of always and under all circumstances granting alimony, the court is not released from the duty of doing so merely because the wife has means of her own, or is otherwise able to afford herself a support, independently of the means of her husband. We are of the opinion, under the statutes and the facts of this case, that it is the duty of the court to provide for the wife's suitable support by the husband or out of his property."

Moreover, in the case of *Williams* v. *Williams,* the record showed that the husband had an estate valued at about $180,000 (146 Tenn., 46, 236 S. W., 940), and an award of $20,000 *in solido* was made (146 Tenn., 48, 236 S. W., 941).

(e) There is another feature of the instant case which should be considered, viz. the fact that the husband, shortly after the divorce decree was obtained, remarried, and has now a wife and a minor stepchild to support. It is not claimed, as we understand, the record, that he is spending his income in riotous living, but that he is spend-

ing it on his present wife, and her child, instead of paying it out as alimony to his former wife.

It is true that it has several times been decided that the support of another wife and family is not a defense for failure to pay alimony. *State ex rel.* v. *Brown* (1903), 31 Wash., 397, 72 Pac., 86; *Park* v. *Park,* 18 Hun, (N. Y.), 466, and 80 N. Y., 156, 62 L. R. A., 974; (second marriage in violation of divorce decree); *Ryer* v. *Ryer,* 33 Hun (N. Y.), 116 (marriage in violation of decree).

But certainly in view of the well-settled policy of the law to encourage marriage, it would seem unfortunate that the new family should be made the victims (as they inevitably must be) of a hard and fast rule that alimony awarded at a previous term must be paid, and that failure so to do is punishable by contempt proceedings, though this be done at the instance of the former wife, who does not need the alimony for her support.

(f) It is also to be observed that the husband in the present case (unlike the defendant in *Williams* v. *Williams,* supra) is not possessed of any estate, and is dependent upon the practice of his profession for his living. He is a man now about fifty years of age. His former wife is some six years younger. The original decree (which cannot be modified by this court) provides that he is to pay her the sum of $150 per month for the rest of her life. This may, of course, be many years, during which time it is natural that the earning capacity of the husband will tend to be decreased rather than increased.

Suppose the chancellor's decree should be affirmed, and the defendant committed to jail until he pays the sum of $300 and other installments of alimony, which, according to this record, he can only do by the practice of his pro-

fession.  It is not perceived how this would better the situation.  As stated by the supreme court of Mississippi in the recent case of *Ramsey* v. *Ramsey* (1921), 125 Miss., 185, 197, 87 South., 491, 493, 14 A. L. R., 712, 715:

"He cannot pay the alimony or any part thereof until he earns the money necessary for that purpose, and, if he should be confined in prison, he will not, while there, be able, of course, to earn any money at all, so that to commit him to prison would defeat the purpose sought to be accomplished."

Some courts, indeed, have gone to the length of saying that a husband who has no property, but is able to work, must be imprisoned, the theory being that this will put a pressure on him to raise the money somehow.  *Fowler* v. *Fowler* (1916), 61 Okl., 280, 161 Pac., 227, L. R. A. (N. S.), 1917C, 89.

Thus, it is stated (61 Okl., at page 286, 161 Pac., at page 232, L. R. A., 1917C, at page 95):

"The attachment will bring the actual resources of the respondent to a practical and decisive test.  Pressure is a great concentrator and developer of force.  Under the stress of an attachment even the vision of the respondent himself may be cleared and brightened, so that he will discern ways and means which were once hidden from him, or seen obscurely."

A contrary, and as it seems to us a better reasoned, view of this question was taken by the supreme court of South Carolina in the case of *Messervy* v. *Messervy* (1910), 85 S. C., 189, 67 S. E., 130, 30 L. R. A. (N. S.), 1001, 137 Am. St. Rep., 873, by the supreme court of Alabama in *Webb* v. *Webb* (1903), 140 Ala., 262, 37 South., 96, 103

Going v. Going.

Am. St. Rep., 30, and by the supreme court of California in the case of *Ex parte Todd,* 119 Cal., 57, 50 Pac., 1071.

In the Alabama case, supra, the defendant made a sworn return to the rule, saying that he had no money or property with which to pay; that he had no employment, nor has he had any since the rendition of the decree, from which to earn money, etc.; and averred his readiness to pay as soon as he was able to procure the money.

The court says:

"There seems to be no dispute about complainant being unable to pay the decree out of money or property, and the court so held. The only remaining insistence is, that he is able to work and will not work, to earn the money to make the payment, and the court ought to commit him for default in this respect. It is difficult to understand how the desired result was thus to be accomplished, and how the court would go about it. If complainant would not labor, the court was without power to inflict corporeal punishment to compel him. If it imprisoned him until he was willing to work, that would not have produced money, meantime, but would have entailed expense for the imprisonment; and if imprisoned and he should relent and come in and signify his willingness to labor, employment would have to be obtaned for him, by the court, by himself or some one else; and how the court would have proceeded legally to hire him out, or supervise him, if he hired himself, and collect the money for application to its decree, has not been made to appear. In any effort in this direction it might undertake, the court would be careful not to violate the law against peonage for the sake of earning money. Such an effort, if undertaken, might

involve the court and its agents in trouble, into which we would not knowingly induce or compel them."

This is the view adopted in 1 R. C. L., 962, and 2 Schouler on Marriage, Divorce and Separation (6th Ed.), section 1845.

In the latter text it is stated that—"There is no contempt where the defendant is unable to pay, even though his inability arises from his willful refusal to work."

With regard to the suggestion made in some of the cases that "the defendant himself holds the key to his prison," it may be observed that such an expression seems applicable rather to cases where a single act is to be performed —e. g., answering a question, signing a deed, or paying over money in the possession of the defendant.

(g) It is also to be observed that under the contention of the appellee there would be no limit to the duration of the imprisonment. If the defendant should refuse to practice his profession and earn money for the payment of the alimony, he might then be committed to jail for the rest of his natural life. Such a thought must, indeed, give us pause. It is reminiscent of "Bleak House," and the chancery court of Dickens' day.

Some of the States where imprisonment for failure to pay alimony is authorized expressly limit the duration of the imprisonment, and provide against more than one imprisonment. 2 Schouler on Marriage, Divorce and Separation (6th Ed.), section 1850.

In New York, for example, the defendant can only be imprisoned once for failure to pay alimony; and where the amount to be paid is under $500, imprisonment is for not longer than three months; and where over $500, for not longer than six months. *Chadwick* v. *Chadwick*

Going v. Going.

(1915), 170 App. Div., 328, 156 N. Y. Supp., 190; *People ex rel. Levine* v. *Shea,* 201 N. Y., 471, 94 N. E., 1060.

(h) The record in this case discloses that the appellee has secured employment, and is working. We have already mentioned the property received by her from the estates of her father and brother since the divorce decree was granted. It has been held that the fact that the wife is receiving support from her father (*Shaffner* v. *Shaffner* [1904], 212 Ill., 492, 494, 497, 72 N. E., 447), or the fact that she is herself working (1 R. C. L., 961; 2 Schouler, M. & D. section 1844; *Nipper* v. *Nipper,* 133 *Ga.,* 216, 65 S. E., 405), cannot be considered as defenses to a contempt proceeding.

Assuming, without deciding, that this may be a correct rule in cases where the decree is flexible, and the whole matter under the control of the chancellor, we think the wife's employment is at least a circumstance to be considered in the present case. *Ramsey* v. *Ramsey* (1921), 125 Miss., 185, 87 South., 491, 14 A. L. R., 712, 715. There is nothing in the decision of *Williams* v. *Williams,* 146 Tenn., 38, 236 S. W., 938, which forbids this. It would surely be an extreme rule which declared that the husband must go to prison for an indefinite period, while the wife, in a case easily to be supposed, was enjoying a sufficient income, earned by her exertions in some congenial pursuit.

(3) After a careful consideration of the various principles involved, and after reading many cases from other jurisdictions, we are of opinion that there should be a distinction made where alimony is payable in future installments, and is to be derived from the husband's labors, between those cases where the decree is flexible and under

the control of the court, and those cases like the present where it has become rigid.

It is very easy for the chancellor to retain jurisdiction and control of the matter in these cases, and it has been said by this court that such is the proper practice.

"In a case of this character—that is, where a monthly or yearly allowance is decreed—the case should always be retained, in order that future decrees may be entered to meet the exigencies of the case." *Taylor* v. *Taylor* (1921), 144 Tenn., 311, 318, 232 S. W., 445.

Although we have found no case which in terms makes this distinction, it seems to have been recognized in *Ex parte Davis* (1908), 101 Tex., 607, 111 S. W., 394, 17 L. R. A. (N. S.), 1140, a case dealing with alimony *pendente lite,* where the court said:

"The order made in this case was not a final judgment; for it was subject at any time to modification, or even to be set aside and annulled by the judge who entered it, and the performance of it could be by the judge excused at any time, upon a showing of inability or other good reason why it should not be performed."

In the English case of *De Lossy* v. *De Lossy* (1890), 15 Probate Division, 115, the report of the case, which is very brief, shows the following facts:

"This was a suit for dissolution at the instance of the wife, and a decree absolute had been pronounced on February 29, 1883. By consent, an order was made at the hearing that the respondent do pay the petitioner by way of permanent maintenance the sum of £200 annually during their joint lives, the sum to be paid quarterly in advance. Towards the end of 1888 the respondent stopped the payments, and directed his solicitor to write to the

petitioner that he had done so in consequence, as he was informed and believed, of her not leading a chaste life.

"Inderwick, Q. C., moved to attach the respondent for nonpayment of the installments due since January, 1889, the arrears amounting in all to £250."

· The trial judge, Hon. Sir CHARLES PARKER BUTT, made this inquiry:

"Has an attachment ever been issued by this court to enforce an order for a money payment made under a final decree, and has it ever been held, in regard to a final judgment of the court directing money payments, that noncompliance was contempt of court?"

The motion was dismissed, the trial judge stating that he did not think the court "has any power to make such an order as now asked for."

In the case of *Lynch* v. *Lynch* (1885), 10 Probate Division, 183, the wife filed her petition for dissolution of marriage, and by order dated April 21, 1885, the husband was directed to pay the sum of £22 costs already incurred, and to pay into the registry or find security for the sum of £50 to answer the petitioner's costs of the hearing of the suit. The husband failed to obey this order, and on affidavits of service and noncompliance, counsel for the wife, on June 9, 1885, moved for an attachment. It was claimed on behalf of the husband that no attachment would lie in view of the Debtor's Act of 1865, which forbade imprisonment for "default in payment of a sum of money."

Sir J. HANNEN said:        :

"I entertain no doubt that the respondent is guilty of a contempt of court if he has the means and does not find security. What may be the effect of such a contempt is

another matter.  It has for many years been the practice of the court so to consider this question, and I must act accordingly and leave the court of appeal to alter the practice if it thinks proper.  Attachment to issue unless security is given within a fortnight."

In the case of *Bates* v. *Bates* (1888), 14 Probate Division, 17, the wife filed a petition for judicial separation, on account of the husband's cruelty, and in August, 1888 before the case came to a hearing, an order was made by Sir J. HANNEN that the respondent should, within seven days, pay the solicitor of the petitioner the sum of £41, "being the amount of the petitioner's costs already incurred, as taxed, and should within the same time pay into court £40, estimated by the register as sufficient to cover the costs and expenses of the petitioner of and incidental to the hearing of the cause, or give a bond under the hand and seal of the respondent and of two sufficient sureties for £80 for payment of the costs of the petitioner, not exceeding the sum of £40."

The husband having failed to comply with the order, the wife applied for leave to issue a writ of attachment against him for not paying the sum of £41 due for taxed costs, and for not paying into court, or giving security for the payment of, the sum of £40 for future costs and expenses; and the writ of attachment was granted.

The case was appealed, and opinions were delivered by Sir HENRY COTTON, L. J., Sir NATHANIEL LINDLEY, L. J., and Sir CHARLES S. C. BOWEN, L. J.

COTTON, L. J., speaking of the sum of £41 taxed costs, says: "It was conceded by the counsel for the petitioner that the first part of the order could not be supported; it must therefore be varied in that respect."

But it was held that the latter part of the order, order-
ing payment into court of £40 for future estimated costs,
or the giving of a bond to secure the same, was not in
conflict with the Debtor's Act; and *Lynch* v. *Lynch,* supra,
was cited on this point.

LINDLEY, L. J., expressed the view that the words "pay-
ment of money" did not refer to depositing a sum of money
in court, and concludes:

"The latter part of the order appealed from is right,
and must be affirmed.   The former part appears to have
been made by an oversight, and the order must be varied
in that respect."

BOWEN, L. J., merely said: "I am of the same opinion."

It will be observed, in the first place, that in both these
cases the suit was pending and under the control of the
court, and, again, that the court refused to allow an at-
tachment, even in such a case, for costs already accrued.

In some States of the Union it has been held that ali-
mony is merely a debt which cannot be enforced by con-
tempt proceedings.   *In re Kinsolving* (1908), 135 Mo.
App., 631, 116 S. W., 1068; *Coughlin* v. *Ehlert,* 39 Mo.,
285; *Segear* v. *Segear,* 23 Neb., 306; 36 N. W., 536; *Leeder*
v. *State,* 55 Neb., 133, 75 N. W., 541.   And see *Marsh* v.
*Marsh* (1903), 162 Ind., 210, 212, 70 N. E., 154; *Allen* v.
*Allen* (1887), 72 Iowa, 502, 34 N. W., 303 (temporary ali-
mony); *Baily* v. *Baily* (1886), 69 Iowa, 77, 28 N. W., 443
(temporary alimony); *North* v. *North* (1878), 39 Mich.,
67.

But these holdings are exceptional, the majority of the
State courts holding that the alimony is not merely a
debt, but that its payment is an act which the court has
ordered the husband to perform, and that he is in default

for failure to obey the court's order in this behalf, and may be attached for contempt.

See the cases cited in the reporter's note to *Adams* v. *Adams* (1912), 80 N. J. Eq., 175, 83 Atl., 190, Ann. Cas., 1913E, 1083, 1087; in the case note to 24 L. R. A., 433; and in the notes to 19 C. J., 299, 300.

It will, however, appear on examination that in many (perhaps in most) of these States the court retains jurisdiction over the matter even after final decree. Some of the cases will also be found to relate to temporary alimony, where the case is, of course, under the full control of the court. Others are perhaps to be explained by the Constitution or statutes of the particular state.

We do not mean to decide that the chancery court cannot, under other conditions, enforce the payment of alimony by attachment for contempt, for this question is not before the court; but we think that under the facts and circumstances shown by the record in this case attachment for contempt is not a proper remedy, and that the appellee must enforce her claims for alimony by other appropriate proceedings.

(4) In this view of the case, we do not find it necessary to consider the appellant's contention as to involuntary servitude under the Thirteenth Amendment to the Constitution of the United States.

It results that the chancellor's decree and that of the court of civil appeals will be reversed, the attachment and *mittimus* quashed, and the case remanded for further proceedings not inconsistent with this opinion.